2016 IL App (1st) 141931

No. 1-14-1931

Fifth Division
March 11, 2016

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

|  |  |  |
|---|---|---|
| MARK J. SCHACHT, M.D., and PETER VASELOPULOS, M.D., | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | No. 13 L 009061 |
| v. | ) ) | The Honorable |
| LEON G. LOME, M.D., | ) ) | James N. O'Hara, Judge Presiding. |
| Defendant-Appellee. | ) ) | |

_____

JUSTICE GORDON delivered the judgment of the court, with opinion.
Presiding Justice Reyes and Justice Lampkin concurred in the judgment and opinion.

**OPINION**

¶ 1     The instant appeal arises from a dispute between plaintiffs and defendant over the dissolution of a corporate medical physician practice. Plaintiffs, Mark Schacht, M.D., and Peter Vaselopulos, M.D., filed a complaint alleging fraud against defendant Leon Lome, M.D., alleging that defendant made fraudulent representations concerning the distribution of assets while they were winding up a dissolved corporation. The trial court dismissed their complaint pursuant to section 2-619(a)(3) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(3) (West 2012)), finding that there had been another pending action for the same

cause between the parties. Plaintiffs appeal, arguing both: (1) that the trial court should have permitted them an extension of time to file a response to the motion to dismiss and (2) that the trial court should not have dismissed the complaint. For the reasons that follow, we affirm.

¶ 2                                    BACKGROUND

¶ 3                              I. Dissolution and Windup

¶ 4      Plaintiffs and defendant are all individuals who were shareholders in Leon G. Lome, M.D., S.C. (the corporation), a medical service corporation that provided medical care and treatment services pursuant to the Medical Corporation Act (805 ILCS 15/1 *et seq.* (West 2012)). Defendant was the designated president of the corporation and plaintiff Schacht was the designated secretary of the corporation.

¶ 5      Plaintiffs sought to dissolve the corporation and on July 7, 2010, defendant filed a complaint in the circuit court of Cook County in which he sought to "void Plaintiffs['] actions in dissolving the Corporation and enjoin Plaintiffs from taking any further action *** or conducting any further business in the name of the Corporation." On July 9, 2010, the circuit court "denied Defendant's request for injunctive relief," a decision affirmed on appeal.[1]

¶ 6      On July 21, 2010, plaintiffs filed articles of dissolution for the corporation with the Illinois Secretary of State, which were signed by plaintiffs but did not include the signature of defendant. The articles of dissolution stated that the dissolution was authorized by a resolution adopted by two-thirds of the shareholders; attached to the articles of dissolution was a resolution, dated July 16, 2010, and signed by plaintiffs but not signed by defendant.

---

[1] Neither the complaint nor the appellate decision is included in the record on appeal. The descriptions of the documents are taken from plaintiffs' complaint in the instant case, and defendant does not dispute their accuracy.

The resolution apparently ratified an earlier "resolution which passed unanimously on June 24, 2010"; "confirmed" the removal of defendant as an officer and director of the corporation effective June 24, 2010; and "confirmed" the dissolution of the corporation effective June 24, 2010. The resolution further provided that, effective July 21, 2010, the articles of dissolution for the corporation would be filed with the Secretary of State; defendant would be terminated as an officer and director of the corporation; and "the remaining Officers and Directors shall take all necessary steps to wind up the business of the corporation."

¶ 7    After the corporation was dissolved by the action of the Secretary of State, both defendant and plaintiffs formed new and separate medical service corporations.

¶ 8    During 2011, Schacht presented a number of checks to plaintiffs and defendant from the corporation's operating account. Specifically, in January 2011, Schacht presented each a check for $25,000; in February 2011, Schacht presented each a check for $10,000; and in April 2011, Schacht presented each a check for $7,372.13. On May 29, 2011, defendant sent an e-mail to Schacht stating that "there is now $39,000 in the [corporation's] account, I would agree to a total distribution of $30,000 at this time leaving $9000.00 in the account." On June 16, 2011, Schacht presented checks of $10,000 each to plaintiffs and defendant.

¶ 9    On June 26, 2011, defendant sent an e-mail to Schacht asking whether Schacht and plaintiff Vaselopulos had "reviewed and signed the agreement for the distribution of the personal assets of [the corporation] that the three of us have all agreed to." The agreement referenced by the e-mail was drafted by defendant's attorney and was ultimately signed by all the parties on June 28, 2011. The agreement provided:

> "This agreement made this 28 day of June, 2011 by the former shareholders of
> Leon G. Lome M.D., S.C., namely, Leon G. Lome, Peter T. Vaselopulos, and Mark J.

Schacht, for the sole purpose of distributing Leon G. Lome M.D., S.C.'s personal property pursuant to its windup.

The parties agree that based upon their mutual promises, considerations and agreements, they shall divide the property of Leon G. Lome M.D., S.C. listed on Exhibit 1[2] which is attached hereto and made a part hereof in the manner showed thereon. The distribution of property shall occur on or before June 30, 2011, unless agreed in writing to any extension."

While the agreement stated that it was entered into "for the sole purpose of distributing [the corporation's] personal property pursuant to its windup" and references the "former shareholders" of the corporation, neither the agreement nor the e-mail makes any express reference to the dissolution.

¶ 10                                II. Dissolution Case

¶ 11        While the above distributions were ongoing, defendant's complaint against plaintiffs, in which he sought to "void Plaintiffs['] actions in dissolving the Corporation," remained pending and the parties engaged in motion practice, including plaintiffs' filing of a combined motion to dismiss pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2010)), and defendant's filing of a motion for summary judgment.[3] In plaintiffs' motion to dismiss pursuant to section 2-619 of the Code, "[plaintiffs] argued *** that [defendant's]

---

[2] Exhibit 1 lists the medical equipment and office supplies of the corporation and shows what property went to each of the parties.
[3] As noted, the complaint in that case is not included in the record on appeal and our description of it is taken from plaintiffs' complaint in the instant case. Several relevant motions in that case are, however, included in the record on appeal because they were attached to defendant's motion to dismiss the instant case. Our discussion of the facts of the other case are taken either from the complaint and motion to dismiss in the instant case or from those motions attached to defendant's motion to dismiss.

claims against them based on their alleged improper dissolution of the Corporation should be dismissed because [defendant] ratified the dissolution of the Corporation."[4]

¶ 12     On April 3, 2013, plaintiffs filed a "motion to disqualify [defendant's attorneys], to stay further proceedings pending resolution of the motion to disqualify, and for an extension of time to reply in support of motion to dismiss." In that motion, plaintiff claimed that after the corporation was dissolved, defendant "negotiated for and received funds from the Corporation's operating account and equipment owned by the Corporation." However, defendant gave what plaintiffs claimed was perjured testimony when he testified in a deposition that "he never received any assets of the Corporation during its dissolution." Plaintiffs claimed that because defendant's law firm assisted defendant in his negotiations, his attorneys would likely be called as witnesses against him and therefore must be disqualified.

¶ 13     In support of their motion, plaintiffs pointed to deposition testimony given by defendant on November 28, 2012, in which defendant testified that " 'I did not receive any money or check[s] from the corporation.' " Plaintiffs also noted that in his response to their motion to dismiss, defendant "argue[d] that he did not receive any benefits from the dissolution of the Corporation" and that in his motion for summary judgment, defendant "argue[d] that the corporation was never properly dissolved." Plaintiffs claimed that "[c]ontrary to [defendant's] assertion that he never took any assets of the corporation while it was being dissolved, *** [defendant] negotiated for and accepted $43,372.00 in addition to medical equipment as his share of the Corporation's assets," and pointed to the e-mails, checks, and agreement described above as evidence in support.

---

[4] This description of the motion to dismiss comes from plaintiffs' motion to compel, which is later described.

¶ 14    On June 12, 2013, the trial court denied plaintiffs' motion to disqualify defendant's lawyers.

¶ 15    On July 19, 2013, plaintiffs filed a motion to compel, in which plaintiffs sought to compel defendant to testify about conversations he had with his attorney. In their motion, plaintiffs claimed that defendant "negotiated for and received $46,372.00 from the Corporation's operating account and equipment owned by the Corporation." Plaintiffs claimed that defendant "perjured himself during his first deposition when he stated under oath that he never received any checks from the Corporation after its dissolution" but admitted to receiving the money during his second deposition. However, plaintiffs claimed that despite the language of the June 2011 agreement providing that the agreement was made " 'for the sole purpose of distributing Leon G. Lome M.D., S.C.'s personal property pursuant to its windup' " (emphasis omitted), "[defendant] now disputes why he received the checks and other assets of the Corporation and has gone so far as to argue in his pleadings before this Court that he received no benefit from the dissolution and that it would be ludicrous to suggest otherwise." Plaintiffs argued that defendant should be compelled to testify about the conversations he had with his attorneys concerning the checks and equipment he received.

¶ 16    On August 12, 2013, plaintiffs filed a complaint in the instant case, which will be discussed below, and, on October 8, 2013, the trial court denied plaintiffs' motion to compel.

¶ 17    On October 28, 2013, plaintiffs filed their reply in support of their combined motion to dismiss defendant's complaint. One of plaintiffs' arguments was that the complaint should be dismissed because defendant ratified the dissolution of the corporation by knowingly accepting the benefits of the dissolution. Plaintiffs argued that "[defendant] contend[s] that [plaintiffs] improperly dissolved the Corporation and distributed its assets without

[defendant's] authorization. However, the evidence before this Court establishes that [defendant] negotiated for and accepted a share of the Corporation's assets as part [of] the winding up process of the dissolved Corporation. Specifically, the evidence before this Court establishes that after the Corporation was dissolved, [defendant] negotiated for and received $46,372.00 from the Corporation's operating account and equipment owned by the Corporation. Now after accepting the benefits of the dissolution of the Corporation [defendant] request[s] that the dissolution be declared null and void. *** [B]y knowingly accepting the benefits of [plaintiffs'] unauthorized dissolution [defendant] ratified *** the Corporation's dissolution and cannot attempt to unwind it now." In support, plaintiffs pointed to the checks, the e-mails, and the agreement set forth above.

¶ 18     Plaintiffs claimed that "[e]ssentially, [defendant's] position is that although [defendant] admit[s] that the Settlement Agreement was entered into 'solely' for the purpose of distributing the Corporation's property pursuant to its 'windup', [defendant] believe[s] that [he] did not ratify the dissolution of the Corporation because there is no language in the Agreement which 'releases or waives' [defendant's] claims against [plaintiffs] and [defendant] has not received all of his share of the Corporation's assets." However, plaintiffs argued that the question of whether defendant received everything he wanted was irrelevant, because defendant accepted some benefits of the dissolution and thereby ratified the dissolution.

¶ 19     No further documents concerning the dissolution case appear in the record on appeal, and it remains pending.

¶ 20                                    III. Instant Case

¶ 21         On August 12, 2013, plaintiffs filed a one-count complaint[5] against defendant alleging fraud. After reciting the facts concerning the checks, e-mails, and the June 2011 agreement to distribute assets, the complaint alleges that prior to entering into the agreement, defendant made misrepresentations to plaintiffs to induce them to sign the agreement and distribute money and assets to defendant. Specifically, the complaint alleges that defendant "specifically represented to Plaintiffs *** that the sole purpose of the Property Agreement was to distribute the personal property of the Corporation pursuant to its wind down and dissolution" and that such distributions were being made as a result of the corporation's dissolution and for the purpose of "winding down the Corporation's business affairs after its dissolution."[6] The complaint alleges that, had plaintiffs known that defendant was still intending to contest the dissolution of the corporation, they would not have entered into the agreement or agreed to a distribution of the corporation's assets.

¶ 22         The complaint alleges that as a result of defendant's fraudulent conduct, plaintiffs were entitled to recover "the damages they sustained through the substantial and unnecessary expenditure of legal fees they have expended while defending themselves against Defendant Lome's allegations that the Corporation should be reinstated and the dissolution unwound." Plaintiffs additionally sought punitive damages and attorney fees.

¶ 23         On December 3, 2013, defendant filed a motion to dismiss the complaint pursuant to section 2-619(a)(3) of the Code, and filed a "corrected" motion on December 10, 2013.

---

[5] Plaintiffs filed an "*ex parte* motion to file [an] amended complaint" on September 12, 2013, that added a second count, but the record does not indicate that leave was granted to file the amended complaint and the dismissal at issue in the instant appeal is based on the original complaint.

[6] We again note that the language of the agreement does not contain any express reference to the dissolution and does not state that the agreement would result in the termination of any claims concerning the propriety of the dissolution.

Defendant claimed that plaintiffs' allegations were identical to arguments that they made in the earlier lawsuit filed by defendant and referenced in plaintiffs' complaint, which was pending in the circuit court. Specifically, defendant claimed that plaintiffs made the same arguments (1) in support of their motion to disqualify defendant's law firm; (2) in support of a motion to compel; and (3) in a reply brief in support of a motion to dismiss.[7] Accordingly, since there was another action pending between the same parties for the same cause, defendant argued that the complaint should be dismissed.

¶ 24    On January 24, 2014, the trial court entered an order setting a briefing schedule on defendant's motion to dismiss. The briefing schedule provided that plaintiffs' response to the motion was due by February 21, 2014. On February 21, 2014, plaintiffs filed a motion for extension of time, which they set for hearing on March 4, 2014; the same day, they filed an amended notice of motion, setting the motion for hearing on March 6, 2014. The motion requested an additional 14 days to respond to the motion to dismiss, claiming that "additional time to conduct further investigation and research regarding the legal and factual basis of Defendant's Motion" was necessary and that plaintiffs' counsel had been involved with several other matters over the past 30 days that had required his attention. On March 4, 2014, the trial court entered a case management order striking the case from the motion call. On March 6, 2014, the trial court entered another case management order again striking the case from the motion call. On March 13, 2014, plaintiffs filed another amended notice of motion, setting the previously served motion for extension of time for hearing on March 20, 2014. On March 20, 2014, the trial court entered a case management order stating that ruling on defendant's motion to dismiss would be issued on May 19, 2014.

---

[7] All of these documents are described in detail in the previous section of our background.

¶ 25      On May 19, 2014, the trial court granted defendant's motion and dismissed the complaint "due to a prior pending action between the parties in chancery." This appeal follows.

¶ 26                                    ANALYSIS

¶ 27      On appeal, plaintiffs argue both: (1) that the trial court should have permitted them an extension of time to file a response to the motion to dismiss and (2) that the trial court should not have dismissed the complaint. We consider each argument in turn.

¶ 28                              I. Extension of Time

¶ 29      Plaintiffs first argue that the trial court should have granted their motion for extension of time to file their response to defendant's motion to dismiss. Illinois Supreme Court Rule 183 (eff. Feb. 16, 2011) provides that "[t]he court, for good cause shown on motion after notice to the opposite party, may extend the time for filing any pleading or the doing of any act which is required by the rules to be done within a limited period, either before or after the expiration of the time." The determination of what constitutes "good cause" under Rule 183 is fact-dependent and rests within the sound discretion of the trial court. *Vision Point of Sale, Inc. v. Haas*, 226 Ill. 2d 334, 353 (2007). "Absent an abuse of discretion, the decision of the circuit court on this issue will not be disturbed." *Vision Point of Sale*, 226 Ill. 2d at 354. A trial court abuses its discretion "when no reasonable person would take the view adopted by the court." *Armagan v. Pesha*, 2014 IL App (1st) 121840, ¶ 24 (citing *In re Marriage of Carpenter*, 286 Ill. App. 3d 969, 974 (1997)).

¶ 30      As noted, in the case at bar, on January 24, 2014, the trial court entered an order setting a briefing schedule on defendant's motion to dismiss, which provided that plaintiffs' response to the motion was due by February 21, 2014. On February 21, 2014, plaintiffs filed a motion for extension of time, which they set for hearing on March 4, 2014; the same day, they filed

an amended notice of motion, setting the motion for hearing on March 6, 2014. The motion requested an additional 14 days to respond to the motion to dismiss, claiming that "additional time to conduct further investigation and research regarding the legal and factual basis of Defendant's Motion" was necessary and that plaintiffs' counsel had been involved with several other matters over the past 30 days that had required his attention. On March 4, 2014, the trial court entered a case management order striking the case from the motion call. On March 6, 2014, the trial court entered another case management order again striking the case from the motion call.[8] On March 13, 2014, plaintiffs filed another amended notice of motion, setting the previously served motion for extension of time for hearing on March 20, 2014. On March 20, 2014, the trial court entered a case management order stating that ruling on defendant's motion to dismiss would be issued on May 19, 2014. We cannot find that the trial court abused its discretion in choosing to do so.

¶ 31     Plaintiffs argue that a trial court should not refuse a continuance when the ends of justice clearly require it, and point out that defendant's motion to dismiss was over 200 pages in length when the exhibits were included and plaintiffs had not sought any previous extensions of time and there was no showing that defendant would be prejudiced by an extension. Plaintiffs are correct that our courts of review have stated that a trial court must exercise its discretion judiciously and "the court should not refuse a continuance when the ends of justice clearly require it." *Olympic Federal v. Witney Development Co.*, 113 Ill. App. 3d 981, 988 (1983). However, we cannot find that this is a case where the ends of justice clearly required a continuance. While the motion to dismiss with exhibits was over 200 pages, the motion portion itself was only slightly over two pages and the exhibits included were all the

_____

[8] In his appellate brief, defendant claims that plaintiffs did not appear in court on either of these two days, resulting in the motion being stricken from the call. In their reply brief, plaintiffs state that defendant's claim is untrue. The record does not indicate the parties present on either of these two dates.

documents that had previously been filed by plaintiffs themselves in the other litigation concerning the dissolution of the corporation. Specifically, the exhibits consisted of: (1) plaintiffs' complaint in the instant case; (2) plaintiffs' motion to disqualify defendant's attorney in the other litigation and the trial court order denying it; (3) plaintiffs' motion to compel defendant to testify as to his conversations with his attorney in the other litigation and the trial court order denying it; and (4) plaintiffs' reply in support of their motion to strike and dismiss defendant's complaint in the other litigation. We also note that plaintiffs did not cite the length of the motion as a basis for finding good cause to grant their extension of time to the trial court. Furthermore, it is plaintiffs' burden as the party seeking the extension of time to establish good cause under Rule 183 (*Vision Point of Sale*, 226 Ill. 2d at 353), and the absence of prejudice to the opposing party is irrelevant to that determination (*Vision Point of Sale*, 226 Ill. 2d at 344 ("the 'mere absence of inconvenience or prejudice to the opposing party is not sufficient to establish good cause under Rule 183' " (quoting *Bright v. Dicke*, 166 Ill. 2d 204, 209 (1995)))). Plaintiffs also fail to explain what they were going to include in their response that could have made a difference in the trial court's ruling. Accordingly, we cannot find that the trial court abused its discretion in considering defendant's motion to dismiss without granting plaintiffs' motion for extension of time to file a response.

¶ 32                                     II. Motion to Dismiss

¶ 33        Plaintiffs also argue that the trial court erred in dismissing their complaint pursuant to section 2-619(a)(3) of the Code, which provides for dismissal of a complaint where "there is another action pending between the same parties for the same cause." 735 ILCS 5/2-619(a)(3) (West 2012). As an initial matter, we must discuss the applicable standard of

review. Plaintiffs claim that we should review the trial court's decision *de novo*, while defendant asks us to review it for an abuse of discretion. Generally, section 2-619 motions present a question of law, which we review *de novo*. *DeLuna v. Burciaga,* 223 Ill. 2d 49, 59 (2006); *Solaia Technology, LLC v. Specialty Publishing Co.,* 221 Ill. 2d 558, 579 (2006); *Morr-Fitz, Inc. v. Blagojevich,* 231 Ill. 2d 474, 488 (2008). *De novo* consideration means we perform the same analysis that a trial court would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011). Since the motion does not require the trial court to weigh facts or determine credibility, *de novo* review is appropriate. *Hapag-Lloyd (America), Inc. v. Home Insurance Co.*, 312 Ill. App. 3d 1087, 1090 (2000); *Miller v. Thomas*, 275 Ill. App. 3d 779, 786 (1995).

¶ 34    However, section 2-619(a)(3) "is a procedural device designed to avoid duplicative litigation." *Whittmanhart, Inc. v. CA, Inc.*, 402 Ill. App. 3d 848, 852 (2010). Accordingly, "even when the threshold requirements—'same parties' and 'same cause'—are met, section 2-619(a)(3) relief is not mandatory." *Crain v. Lucent Technologies, Inc.*, 317 Ill. App. 3d 486, 495 (2000). Instead, the trial court has the discretion to determine whether both actions should proceed through the weighing of several factors. *Zurich Insurance Co. v. Baxter International, Inc.*, 173 Ill. 2d 235, 243-44 (1996). Thus, due to this weighing of factors, a trial court's decision to dismiss pursuant to section 2-619(a)(3) will not be overturned absent an abuse of that discretion. *Hapag-Lloyd (America)*, 312 Ill. App. 3d at 1091; *Continental Casualty Co. v. Radio Materials Corp.*, 366 Ill. App. 3d 345, 347 (2006). See also *Kellerman v. MCI Telecommunications Corp.*, 112 Ill. 2d 428, 447 (1986) ("[E]ven when the 'same cause' and 'same parties' requirements are met, section 2-619(a)(3) does not mandate automatic dismissal. Rather, the decision to grant or deny defendant's section 2-619(a)(3)

motion is discretionary with the trial court."). An abuse of discretion occurs when the ruling is "arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view." *Favia v. Ford Motor Co.,* 381 Ill. App. 3d 809, 815 (2008).

¶ 35    In the case at bar, the parties do not discuss the factors a trial court should consider in determining whether dismissal is appropriate under section 2-619(3) or the trial court's application of these factors. Instead, their arguments solely focus on whether one of the threshold requirements has been satisfied. As noted, section 2-619(a)(3) provides for dismissal of a complaint where "there is another action pending between the same parties for the same cause." 735 ILCS 5/2-619(a)(3) (West 2012). The parties do not dispute that there is another lawsuit pending between the same parties, namely, the other lawsuit concerning the dissolution of the corporation. The only dispute is whether the other action is "for the same cause" as required for dismissal under section 2-619(a)(3). Thus, if we determine that the trial court properly found that there are two actions pending for the same cause, we will affirm the trial court's dismissal of plaintiffs' complaint. We note that the record on appeal does not provide any insight into the trial court's reasoning behind its dismissal. However, as the appellants, plaintiffs bear the burden of providing this court with a complete record on appeal and in the absence of evidence in the record showing otherwise, we presume that the trial court acted in conformity with the law. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984) ("[A]n appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis.").

¶ 36        Lawsuits present the same cause when "the relief requested is based on substantially the same set of facts." *Whittmanhart, Inc. v. CA, Inc.,* 402 Ill. App. 3d 848, 853 (2010). The actions need not be identical; "the crucial inquiry is whether both arise out of the same transaction or occurrence, not whether the legal theory, issues, burden of proof, or relief sought materially differs between the two actions." *Jackson v. Callan Publishing, Inc.,* 356 Ill. App. 3d 326, 337 (2005). "In other words, the focus of the inquiry is on whether the relief requested relies on substantially the same facts." *Jackson*, 356 Ill. App. 3d at 337.

¶ 37        In the case at bar, the instant case and the other lawsuit are inextricably intertwined. We note that the complaint in the other lawsuit is not contained in the record on appeal. Instead, the record only contains the description of that complaint as alleged in plaintiffs' complaint in the instant lawsuit, as well as the motions in that case that were attached to defendant's motion to dismiss in the instant case. However, defendant does not dispute the accuracy of plaintiffs' description of the complaint and from that description, as well as documents included in the record on appeal, it is apparent that the two lawsuits arise from defendant's challenge to the dissolution of the corporation.[9] According to plaintiffs, in the other lawsuit, defendant sought to "void Plaintiffs['] actions in dissolving the Corporation and enjoin Plaintiffs from taking any further action for or conducting any further business in the name of the Corporation." In response to defendant's complaint in that lawsuit, plaintiffs filed, *inter alia*, a motion to disqualify defendant's law firm, a motion to compel defendant to testify about the content of conversations with his attorney, and a motion to dismiss, all of which focused on defendant's actions in accepting money and assets from the corporation after its

---

[9] To the extent that any incompleteness of the record affects our analysis, any doubts will be resolved against plaintiffs who, as the appellants, had the burden of providing a sufficient record to support their claims. *Foutch*, 99 Ill. 2d at 392 ("Any doubts which may arise from the incompleteness of the record will be resolved against the appellant.").

dissolution. Similarly, in the case at bar, the complaint focuses on defendant's conduct in agreeing to distribute the corporation's assets and in accepting money from the corporation after its dissolution, alleging that defendant knew that he would be challenging the dissolution at the time of his actions. Moreover, the primary relief sought by plaintiffs in the instant case is recovery of "the damages they sustained through the substantial and unnecessary expenditure of legal fees they have expended while defending themselves against Defendant Lome's allegations that the Corporation should be reinstated and the dissolution unwound," further linking the two cases. We cannot find that the trial court erred in finding that the two actions were "for the same cause" for the purposes of section 2-619(a)(3).

¶ 38        Plaintiffs argue that the two lawsuits "did not concern the identical facts," and further argue that "[t]he only time the allegations in Plaintiffs['] Complaint were brought before a court prior to the filing of this lawsuit was in motion practice." We do not find these arguments persuasive. First, as noted, "the purpose of the two actions need not be identical; rather, there need only be a substantial similarity of issues between them." *Overnite Transportation Co. v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 332 Ill. App. 3d 69, 76 (2002). Although plaintiffs attempt to distance the cases from each other by arguing that "[t]he only similarity in the two actions was that they both involved disputes regarding the dissolution of a corporation that the parties were formerly involved with as members," this similarity is quite substantial. The two cases involve the same action of dissolving the corporation, the same action by defendant of entering into an agreement with plaintiffs to distribute the corporation's assets and accepting checks, and the same arguments by plaintiffs as to the impropriety of defendant's doing so.

¶ 39       Furthermore, the fact that plaintiffs' arguments were "only *** brought *** in motion practice" does not change this result. One of those motions was a motion to dismiss defendant's complaint and one of the primary bases for seeking dismissal was the argument that defendant ratified the dissolution by accepting the benefits of the dissolution. The facts underlying the two actions are identical. As noted, "the crucial inquiry is whether both [actions] arise out of the same transaction or occurrence, not whether the legal theory, issues, burden of proof, or relief sought materially differs between the two actions." *Jackson,* 356 Ill. App. 3d at 337. Here, we can find no error in the trial court's conclusion and, accordingly, affirm the dismissal of plaintiffs' complaint.

¶ 40                         CONCLUSION

¶ 41       For the reasons set forth above, the trial court did not err in dismissing plaintiffs' complaint pursuant to section 2-619(a)(3) of the Code where there was another action between the same parties for the same cause pending in another court.

¶ 42       Affirmed.