2020 IL App (3d) 200154

Opinion filed October 23, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THOMAS J. FREDERICK, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Will County, Illinois |
| | ) | |
| v. | ) | |
| | ) | Appeal No. 3-20-0154 |
| TERRY L. GACA and JANET L. WAYMAN, | ) | Circuit No. 19-CH-1237 |
| Individually and as Trustee of the Janet L. | ) | |
| Wayman Trust, | ) | Honorable |
| | ) | Theodore J. Jarz, |
| Defendants-Appellants. | ) | Judge, Presiding |

_____

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Presiding Justice Lytton and Justice Schmidt concurred in the judgment and opinion.
_____

**OPINION**

¶ 1        Plaintiff Thomas Frederick brought a multi-count complaint alleging that defendants Terry Gaca and Janet Wayman, individually and as trustee of the Janet L. Wayman Trust, violated local zoning ordinances by operating a boarding house and a vehicle parking and storage facility on residential property they owned next door to Frederick's property. The trial court granted partial summary judgment in favor of Frederick and entered a permanent injunction enjoining the defendants from operating a boarding house and vehicle parking and storage facility on the property. Gaca and Wayman appealed. We affirm.

BACKGROUND

¶ 3    Plaintiff Thomas Frederick filed a multi-count complaint against defendants Terry Gaca and Janet Wayman, individually and as trustee of the Janet L. Wayman Trust. The counts alleged public nuisance (count I); conspiracy to create a public nuisance (count II); and violations of the City of Naperville Zoning Ordinance, including operating a boarding house (counts III, IV); operating a parking and storage facility (counts V, VI), storing trucks in excess of the allowable weight and at unlawful times (counts VII, VIII); parking a trailer (count IX); not using required hard surface for the standing, loading and unloading motor vehicles (count X); and parking unlicensed vehicles on the property (count XI). All the counts concerned residential property owned by the trust on Lisson Road in Naperville and located next door to Frederick's house.

¶ 4    In September 2019, Frederick submitted requests to admit and interrogatories to both Gaca and Wayman. On November 11, 2019, a quit claim deed was recorded transferring ownership of the Lisson property from the Janet L. Wayman Trust to the Terry L. Gaca Trust. Also in November 2019, Frederick sought a preliminary injunction to enjoin the defendants from using the property for vehicle parking and storage. A hearing took place on the motion for injunctive relief on November 19, 2019.

¶ 5    Michael Menichini testified. He was a special process server who unsuccessfully attempted to serve various documents at the property four times. He observed approximately 20 vehicles parked on the property, including cars, pickup trucks, delivery trucks and a heavy-duty work truck. On two visits, he counted 23 vehicles. The surface on which the vehicles were parked looked like packed dirt and crushed materials.

¶ 6    Janet Wayman testified. She lived on the property at issue with Gaca, her husband, from 1996 to late October 2018. The house had six bedrooms, six people were currently living in the

house and two others had lived there previously. Each tenant had a vehicle. She acknowledged there were more than 15 vehicles parked and stored on the property, and there were box trucks parked there for several months. The property was not used for storage, but people did pay to park there. She was aware people were paying to park. She did not formally authorize Gaca to use the property as a parking facility and would not have authorized the use if she had known it was in violation of the zoning ordinance. The Terry L. Gaca Trust now owned the property, which was transferred from her trust the week prior to the hearing. The transfer was made to balance the value of their trusts. She was not involved in her husband's business.

¶ 7        Gaca testified. He lived at the Lisson house until December 2018. He had paying tenants beginning in January 2019. In total, six people lived in the house and two other people had previously lived there. There was one vehicle per tenant. He accepted payment for parking and storage of nontenant-owned vehicles on the property beginning in February 2019. There were approximately 24 to 26 vehicles there in November 2019 and other vehicles had been parked there but were no longer on the property. The driveway was crushed asphalt and the vehicles were at all times parked on the asphalt. He denied he placed an ad on Craigslist that counsel downloaded on November 11, 2019, regarding renting parking space at the property, and to his recollection, he did not authorize an ad on Spacer, also downloaded on November 11, 2019. Gaca explained he placed ads on Craigslist many times for parking and did not know when he stopped. On cross-examination, Gaca stated that the property was a shared home with six tenants and an oral lease. The rent included parking and utilities. He did not believe the use was in violation of any local ordinances.

¶ 8        Thomas Frederick testified. He offered his interpretation of the Naperville zoning ordinances and opined that the defendants violated the ordinances by housing individuals who

3

were not a family in a single-family dwelling and by operating a parking facility, which was also not a permitted use under the local ordinances.

¶ 9       The trial court found that parking for hire was not a permitted use for the property and allowable parking was only by the tenants as accessory to their living in the house. The court described the zoning violations as "willful" and "crafty." The trial court rejected an interpretation that a single-family dwelling meant only a single family could live on the property. The court also rejected Frederick's claim that the defendants were running the parking operation as a home business. It granted Frederick's motion for a preliminary injunction and ordered the defendants to remove the vehicles on the property except those belonging to Gaca, Wayman, the trust or the tenants.

¶ 10      On November 15, 2020, Frederick received Gaca's unverified responses but did not receive anything from Wayman. On December 5, 2019, defense counsel agreed to the briefing schedule, including due dates of December 30, 2019, to answer the complaint, and of January 31, 2020, to respond to the motion for partial summary judgment. On December 13, 2019, defense counsel moved to withdraw. On December 20, 2019, Frederick filed his second motion for partial summary judgment and submitted a statement of material facts with numerous exhibits, including affidavits and photographs. On January 2, 2020, the trial court allowed substitution of defense counsel. On January 6, 2020, defense counsel moved to extend the time to file the defendants' summary judgment response and answer the complaint and to vacate Gaca and Wayman's admissions. Frederick filed a motion for preliminary injunction to prevent additional tenants on the property. A hearing took place on January 13, 2020, and the trial court issued a preliminary injunction. At the same hearing, defense counsel sought an extension of time to respond to discovery and/or the pleadings, asserting good cause to extend existed as he was substitute counsel and new to the case.

The trial court found that substitution of counsel was not good cause to extend the time to respond to the requests to admit. On Frederick's suggestion, the trial court allowed the defendants until January 31, 2020, to respond and to conclude discovery.

¶ 11 On January 27, 2020, defense counsel filed an emergency motion to withdraw. At a January 28, 2020, hearing, the trial court granted the motion to withdraw but ordered that the due dates set would remain and the defendants would be bound by them. The court instructed the defense to file an answer when it was ready but rejected the defendants' request to change any discovery dates regarding the motion for summary judgment. The court also informed the defendants that if they did not respond to the requests to admit, the facts would be deemed admitted. On January 29, 2020, the defendants obtained new counsel. Defense counsel moved on January 30 to extend the due date of the answer, noticing a hearing on February 4, 2020, and then on February 10, 2020. On February 7, 2020, the defendants moved to extend the time to respond to Frederick's partial summary judgment motion. On February 10, 2020, the court denied both motions to extend, stating that it had already admonished Gaca and Wayman that new counsel would "take the situation in the circumstances that it is." The court reiterated that the retention of new counsel in and of itself was not grounds to extend due dates. The court further stated that the information defense counsel needed was available from its clients, who knew whether they were complying with zoning ordinances.

¶ 12 On February 24, 2020, the defendants filed a motion to dismiss the complaint and to dissolve the preliminary injunction as moot. Attached to the motion were Gaca's affidavit attesting he moved back into the Lisson property on January 16, 2020, and affidavits from two other individuals averring that they rented "boarding rooms" at the property. A hearing took place on February 26, 2020. The court considered the defendants' motion to dismiss, which argued that

Frederick's claims were moot because the house was now lawfully used by Gaca and two people who rented boarding rooms. The court concluded that the motion to dismiss resolved a lot of fact issues regarding the yet-unanswered requests to admit and interrogatories. The court denied the defendants' motion to dismiss the complaint, to dissolve the injunction and to file a counterclaim.

¶ 13     The trial court granted Frederick's motion for partial summary judgment (counts III-VI, VIII, XI, home occupations violations) and entered a permanent injunction enjoining the defendants from operating a boarding house or a parking or storage facility, or engaging in unlawful home occupations. The court granted Frederick's request to conform the pleadings to the proofs to allow him to add the home occupations counts to the complaint. The court found issues of fact remained regarding the public nuisance and conspiracy to commit public nuisance counts (counts I, II). The trial court denied a motion for default filed by Frederick and granted the defendants leave to file an answer to the complaint on the remaining counts. Gaca and Wayman timely filed an interlocutory appeal. Ill. S. Ct. R. 307(a)(1) (eff. Nov. 1, 2017). On defense counsel's motion, we allowed the defendants' attorney to withdraw, and substitute counsel filed an appearance on July 28, 2020.

¶ 14                                    ANALYSIS

¶ 15     Gaca and Wayman raise three issues on appeal: whether the trial court erred when it denied their motion to extend and when it granted partial summary judgment in favor of Frederick, and whether the defendants were denied due process.

¶ 16     We begin with the defendants' challenge to the trial court's denial of their motions to extend. They sought additional time to answer discovery and the complaint and to respond to the motion for partial summary judgment. The defendants argue that good cause existed to extend the deadlines, they did not instruct nor consent to the withdrawal of counsel, the partial summary

6

judgment motion was excessive, and they were prejudiced by the entry of the dispositive partial summary judgment order, which prevents them from using the property as they claim is permitted. In addition, they argue that the partial summary judgment ruling prevents them from advancing their arguments, thus prejudicing them. The defendants submit that were they allowed to respond and answer, they would demonstrate that material issues of fact exist regarding whether the property was operated as a boarding house.

¶ 17    The court may extend deadlines prior to judgment on good cause shown. See Ill. S. Ct. R. 183 (eff. Feb. 16, 2011); 735 ILCS 5/2-1007 (West 2018). The trial court has discretion to consider "all objective, relevant evidence *** why there is good cause for [a party's] failure to comply with the original deadline and why an extension of time should now be granted." *Vision Point of Sale, Inc. v. Haas*, 226 Ill. 2d 334, 353 (2007). Good cause may include mistake, inadvertence or attorney neglect. *Id.* Whether good cause exists is a fact-dependent determination. *Schacht v. Lome*, 2016 IL App (1st) 141931, ¶ 29. It is within the trial court's discretion whether good cause exists to grant a motion to extend. *Id.*

¶ 18    The defendants argue that they did not receive proper service of the emergency motion to withdraw filed January 27, 2019, in that although Gaca received electronic service, there was no record of electronic service to Wayman, no record of personal service on Gaca or Wayman, and no evidence Gaca acknowledged receipt of service. We find this issue is waived. The two motions to extend did not mention improper service and the defendants cannot raise the issue for the first time on appeal. See *Gausselin v. Commonwealth Edison Co.*, 260 Ill. App. 3d 1068, 1079 (1994) (finding waiver where issue not included in motion for mistrial but raised for first time in posttrial motion).

¶ 19         We next address Gaca and Wayman's challenge to the trial court's denial of their motions to extend. They argue that their counsel's withdrawal a couple days prior to the due date for their response to the partial summary judgment motion constituted good cause to extend. They rely on Illinois Supreme Court Rule 13 (eff. July 1, 2017) as support that the denial of the motions to extend was improper.

¶ 20         When counsel moves to withdraw, he must obtain leave of court and give notice to all the parties of record. Ill. S. Ct. R. 13(c)(2) (eff. July 1, 2017). Notice may be electronically given if the party acknowledges receipt. *Id.* The notice should inform the party that he should retain counsel or file a supplementary appearance within 21 days of entry of the withdrawal order "to insure notice of any action in said cause." *Id.* Substitution of counsel immediately prior to a scheduled date is not good cause to grant a continuance. *In re Marriage of Yakin*, 107 Ill. App. 3d 1103, 1113 (1982).

¶ 21         At the hearing on counsel's motion to withdraw, the trial court admonished that the defendants would suffer the consequences if they did not comply with the deadlines. The court stated it would allow Gaca and Wayman 21 days to obtain new counsel but reiterated that substitute counsel would not affect the prior deadlines. At the hearing on the motion to extend, the court reminded the parties that it had already stated that new counsel would receive the case as it was and "take the situation in the circumstances that it is." The court expressly stated that substitution of counsel "in and of itself" did not constitute good cause. In the trial court's view, all the information necessary to respond to Frederick's pleadings was available from the defendants and there was no need to extend discovery to respond to the partial summary judgment motion. The court found that the defendants failed to establish good cause to merit an extension of the due dates for their responses to Frederick's pleadings. The court considered that if Gaca would not get along

8

with his attorneys, he could appear *pro se* but the deadlines would remain in place. We find that the court did not abuse its discretion when it denied the defendants' motions to extend.

¶ 22 Contrary to Gaca and Wayman's claim, Illinois Supreme Court Rule 13 does not dictate a different result. "Courts have interpreted [Rule 13's] provisions as requiring a continuance of at least 21 days after the entry of the order granting withdrawal to allow the party to retain counsel or enter his own supplementary appearance." *In re Marriage of Pavlovich*, 2019 IL App (1st) 172859, ¶ 17. The defendants immediately retained new counsel who entered an appearance the day after the motion to withdraw was granted and two days before the filing deadlines. New counsel sought an extension the following day. Because the defendants retained counsel within 21 days of entry of the order to withdraw, the concern attached to an unrepresented party as acknowledged in Rule 13 does not apply. See *Ali v. Jones*, 239 Ill. App. 3d 844, 849 (1993) (noting Rule 13's concern for continued representation). Although counsel complained he could not properly prepare in order to meet the deadlines, the trial court's denial of the defendants' motions to extend did not implicate their right to representation. We find the trial court did not err in denying Gaca and Wayman's motions to extend.

¶ 23 The second issue on appeal is whether the trial court erred when it entered partial summary judgment in favor of Frederick and a permanent injunction against the defendants. Although Gaca and Wayman appeal from the order granting relief to Frederick, they make no specific arguments regarding either summary judgment or the permanent injunction except that the trial court's denial of their motion to extend prevented them from responding to the motions for partial summary judgment and a permanent injunction. They also argue the court's ruling prevents them from using the property for what they claim is a permitted use and subjects them to liability for Frederick's attorney fees.

¶ 24    An owner or tenant of real property located within 1200 feet of a structure or building in violation of local zoning ordinances may file an action to correct the violation where "his property or person will be substantially affected by the alleged violation." 65 ILCS 5/11-13-15 (West 2018); *Bockweg v. Konopiots*, 2013 IL App (1st) 121122, ¶ 7. Section 11-13-15 permits private landowners to bring an action against ordinance violators and affords them relief where " 'municipal officials are slow or reluctant to act, or where their actions do not protect the landowners' interests.' " *Ryan v. City of Chicago*, 2019 IL App (1st) 181777, ¶ 11 (quoting *Dunlap v. Village of Schaumburg*, 394 Ill. App. 3d 629, 638 (2009)).

¶ 25    Summary judgment should be granted only when the pleadings, depositions, admissions on file and affidavits demonstrate there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018). The purpose of summary judgment is to determine whether any questions of fact exist. *Robertson v. Sky Chefs, Inc.*, 344 Ill. App. 3d 196, 199 (2003). We review a trial court's grant of summary judgment *de novo*. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004).

¶ 26    The defendants submit that were they allowed to file responses, they would demonstrate material issues of fact exist regarding whether the property was being unlawfully operated as a boarding house. Gaca maintains that he had lived at the house since January 2020 with two others who rented boarding rooms as allowed under section 6-2-15(2) of the Naperville zoning ordinance. Naperville Zoning Ordinance § 6-2-15(2) (amended Nov. 7, 2018). The defendants further maintain that prior to January 2020, they rented the house as a shared home as permitted under section 6-2-15(1) of the ordinance. Naperville Zoning Ordinance § 6-2-15(1) (amended Nov. 7, 2018). The defendants' proposed response to the allegations that they operated vehicle parking

10

and storage is that the vehicles were ancillary to the use of the house and in compliance with section 6-2-20 of the ordinance. Naperville Zoning Ordinance § 6-2-20 (adopted Jan. 16, 2007).

¶ 27 Gaca and Wayman's response to Frederick's motion for partial summary judgment would not have prevented entry of the summary judgment order. At the hearing on Frederick's motion for a preliminary injunction, Gaca admitted that he accepted payment from tenants beginning in January 2019; six tenants were living there at the time of the hearing and two others had previously rented rooms; and each tenant had one vehicle. Gaca further testified that he accepted payment for vehicle parking from nontenants. In November 2019, he accepted payment for 24 to 26 vehicles that were parked on the property and there had been other vehicles that had been parked and stored there. He acknowledged that he placed ads on Craigslist for parking and storage on the property. Wayman acknowledged that six people lived in the house and that two others had previously lived there. She admitted there were more than 15 vehicles on the property, including box trucks that were stored there for several months. She was aware people were paying to park vehicles there. Menichini, the special process server, observed between 20 and 23 vehicles on the property, including cars, pickup trucks, delivery trucks and a heavy-duty work truck.

¶ 28 Gaca answered Frederick's request to admit late and Wayman never answered; thus, their failures to respond constitute judicial admissions. See Ill. S. Ct. R. 216(c) (eff. July 1, 2014) (requests to admit that are not timely denied or objected to are deemed admitted); *Robertson*, 344 Ill. App. 3d at 199 (when a party fails to respond to a request to admit, the "factual matters in the request are deemed judicial admissions which cannot later be controverted by any contradictory evidence"). The requests to admit established that Gaca and Wayman operated a boarding house; that tenants individually leased rooms on a month-to-month basis with oral leases; and that

11

vehicles were parked on the property for payment, including trucks weighing over 8000 pounds of curb weight that remained parked during prohibited hours.

¶ 29    The above testimony and admissions demonstrate that no genuine issues of material fact exist whether the defendants were operating a boarding house in violation of the Naperville zoning ordinance (counts III, IV). See Naperville Zoning Ordinance §§ 6-2-15(1) (amended Nov. 7, 2018), 6-6I-2 (adopted Jan. 21, 1980), 6-6I-3 (adopted Jan. 21, 1980). The ordinance defines a boarding house as a building wherein individuals live in separate spaces under individual rental agreements with varying lease terms and prohibits their use. Naperville Zoning Ordinance §§ 6-1-6 (amended Aug. 20, 2019), 6-2-15 (amended Nov. 7, 2018). In addition to Gaca's and Wayman's admissions, the exhibits attached to Frederick's statement of material facts included excerpts from a sworn statement of Samantha Flores, a former tenant, who stated she lived at the Lisson property on a month-to-month oral lease. An affidavit from Ross Quick established that he was a tenant at the property from August 24 to October 4, 2019. At that time, six other tenants resided in the house. He slept in the basement, where Gaca was in the process of adding a second bedroom. An affidavit from the Naperville code enforcement officer offered his opinion that substantial evidence supported that the property was used as a boarding house.

¶ 30    Evidence that the defendants operated the property as a parking and storage facility for vehicles includes Flores's sworn statement that while living there, she observed vehicles stored on the property, as well as a sign on the mailbox indicating vehicle parking and storage space for rent. Edi Dalazi attested in an affidavit that he sold cars via Facebook, saw and answered an advertisement on Craigslist for vehicle storage, and used the Lisson property to store 12 to 15 cars for which he paid Gaca. Dalazi would meet his customers at the property to allow them to test drive the vehicles stored there. Jose Garcia attested in an affidavit that he also answered Gaca's

12

Craigslist ad for vehicle storage and used the property to store two large box trucks and one other truck. The box trucks remained stored on the property from April 4, 2019 to October 29, 2019. He paid between $156 and $225 per month to park and store his vehicles. Attached to Garcia's affidavit were text messages between him and Gaca regarding the parking and storage offerings. The messages included photographs of the available space and showed other vehicles stored there. Attached to the affidavit of tenant Quick were photographs he took of the vehicles parked and stored on the property. The code officer opined in his affidavit that the evidence supports a conclusion that Gaca and Wayman used the property for vehicle parking and storage. We find this evidence is sufficient to establish that the defendants violated the Naperville zoning ordinance by operating a vehicle parking and storage facility (counts V, VI).

¶ 31    Attached to Garcia's affidavit were vehicle registrations for the two box trucks he stored continuously from April to November 2019. The registrations indicate that the trucks weighed 26,000 pounds each. Also attached were the text messages between Garcia and Gaca that demonstrate the vehicles were on the property and remained parked and stored there between the hours of 2 and 5 a.m. from April to November 2019 in violation of the Naperville zoning ordinance (count VIII). See Naperville Zoning Ordinance, § 6-2-20(2), (2-2.1) (adopted Jan. 16, 2007) (prohibits the storage of trucks in excess of the allowable weight and at unlawful times). The affidavit of Dalazi, the car salesman, established that the defendants violated the zoning ordinance by allowing unlicensed vehicles to be parked on the property (count XI). Dalazi attested that although all the vehicles he stored on the property were registered, not all the vehicles had license plates. See Naperville Zoning Ordinance § 6-2-20(1) (adopted Jan. 16, 2007) (parking accessory to residential use "shall be used for the parking of properly licensed motor vehicles only"). The

affidavit of Steve LaPino, a private investigator who surveilled the property, attested that he documented cars without license plates leaving and returning to the property on several occasions.

¶ 32 The evidence also supports Frederick's claims that the defendants violated the home occupations provisions of the ordinance. Section 6-2-8 of the Naperville zoning ordinance prohibits the use of residential property to operate a home-based business with certain enumerated exceptions not relevant here. Operation of a vehicle parking and storage facility and car sales are not permitted as home occupation uses or exceptions. See Naperville Zoning Ordinance § 6-2-8 (adopted Jan. 16, 2007). Dalazi and Garcia attested that they paid to park and store vehicles on the property. Dalazi averred that he operated his car sales business from the property by meeting potential buyers for test drives. Also contrary to the dictates of the ordinance, the parking and storage facility and car sales were not conducted within the dwelling unit, no employees lived in the house, and the parking and storage facility and car sales business were not subordinate and incidental uses of the residential building.

¶ 33 The pleadings, admissions and affidavits submitted with Frederick's motion for partial summary judgment and the statement of material fact and accompanying exhibits in support of the motion show that there is no genuine issue as to any material fact that Gaca and Wayman operated a boarding house and vehicle parking and storage facility on the property in violation of the Naperville zoning ordinances. Frederick also established that he lived within 1200 feet of the defendants' property and was substantially affected by the ordinance violations. See *Greer v. Illinois Housing Development Authority*, 150 Ill. App. 3d 357, 390 (1986), *aff'd*, 122 Ill. 2d 462 (1988) ("it is [the] nature of the zoning violation itself that establishes the 'substantial effect' sufficient to *** maintain [the] action"). Accordingly, Frederick was entitled to relief. See 65 ILCS

14

5/11-13-15 (West 2018). We thus find that the trial court did not err when it granted partial summary judgment in favor of Frederick on counts III-VI, VIII, and XI of his complaint.

¶ 34   We next review the trial court's grant of a permanent injunction prohibiting the defendants from using the property as a boarding house or for the storage and parking of vehicles. Gaca and Wayman argue that the improper grant of partial summary judgment against them due to the court's refusal to extend the deadline for their response resulted in entry of the permanent injunction against them. In their view, the trial court's rulings are contrary to principles of fairness and justice.

¶ 35   To be entitled to a permanent injunction, the movant must establish (1) he has a clear and ascertainable right in need of protection, (2) he will suffer irreparable harm if the injunction does not issue, and (3) there exists no adequate remedy at law. *New Light Cemetery Ass'n v. Baumhardt*, 373 Ill. App. 3d 1013, 1018 (2007). This court will not reverse a trial court's order granting a permanent injunction unless it is against the manifest weight of the evidence. *Vaughn v. City of Carbondale*, 2016 IL 119181, ¶ 22.

¶ 36   Frederick demonstrated that he has a clear and ascertainable right in need of protection. Per Gaca's and Wayman's admissions, prior to January 2020, six or seven unrelated individuals rented rooms from the defendants with individual, oral, month-to-month leases, and Gaca accepted payment from one online car dealer and several truck owners allowing them to park vehicles of various kinds on the property. Gaca advertised for rooms at the house and for parking and storage space on the property. Frederick was statutorily authorized to bring an action for the defendants' ordinance violations to protect his property. See 65 ILCS 5/11-13-15 (West 2018).

¶ 37   Frederick established that he will suffer harm if the injunction does not issue. Gaca and Wayman continued to operate the property as a boarding house and vehicle parking and storage

15

facility after admitting to the ordinance violations. They attempted to claim the house was now occupied by Gaca as owner and two individuals to whom he rented boarding rooms, which they claim was a lawful use under the zoning ordinance. This conduct suggests that the defendants will continue to use the property, including renting rooms, based on an incorrect interpretation of the zoning ordinances. Additionally, Gaca and Wayman have complained that the injunction prevents them from using the property as they deem appropriate, again based on their interpretation of the zoning ordinance, which also suggests that they plan to continue to unlawfully use the property.

¶ 38    Lastly, there exists no adequate remedy at law. The statute itself does not provide monetary relief but rather allows for injunctive relief. As evidenced by the defendants' transformation of the boarding or "shared" house to an owner/occupied residence with merely two boarders renting rooms, it seems likely the defendants will continue to operate the property based on an incorrect interpretation of the zoning ordinances. The harm of likely repeated violations makes damages "difficult or impossible" to measure. No available remedy would relieve Frederick of the defendants' wrongful use of the property neighboring his property. The trial court did not err when it granted Frederick's request for a permanent injunction prohibiting the defendants from operating a boarding house or vehicle parking and storage facility.

¶ 39    The last issue is whether the defendants were denied due process. Gaca and Wayman argue they were denied notice and opportunities to respond and be heard when the court failed to extend the deadlines. According to the defendants, they were unable to timely respond to Frederick's partial summary judgment motion, the court ruled against them, and the ruling prevents them from using the property as they wish and in accordance with the zoning ordinance.

¶ 40    Procedural due process affords a party notice and an opportunity to respond and to be heard. *Gold Realty Group Corp. v. Kismet Café, Inc.*, 358 Ill. App. 3d 675, 681 (2005). "The parties have

16

a right to be heard when their rights are affected, and in order to enjoy that right they must first be notified." *In re Estate of Gustafson*, 268 Ill. App. 3d 404, 409 (1994). We review a claim of a due process violation *de novo*. *Sudzus v. Department of Employment Security*, 393 Ill. App. 3d 814, 824 (2009).

¶ 41 We reject the defendants' assertion that they were denied due process. The court entered an agreed scheduling order on December 5, 2019, which provided that Frederick would file his second motion for partial summary judgment by December 20, 2019, the defendants would respond by January 31, 2020, and the motion would be heard on February 26, 2020. Frederick filed his second motion for partial summary judgment on December 20, 2019, and provided notice of the motion via email and regular mail to defense counsel and substitute counsel. The defendants, however, did not comply with the deadlines but rather sought unsuccessfully to extend them. This court does not equate Gaca and Wayman's failure to timely respond with a lack of opportunity to respond. We find there was no due process violation.

¶ 42                                             CONCLUSION

¶ 43 For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

¶ 44 Affirmed.

**No. 3-20-0154**

| | |
|---|---|
| **Cite as:** | *Frederick v. Gaca*, 2020 IL App (3d) 200154 |
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 19-CH-1237; the Hon. Theodore J. Jarz, Judge, presiding. |
| **Attorneys for Appellant:** | Ronald J. Broida and Joseph K. Nichele, of Broida & Nichele, Ltd., of Naperville, for appellants. |
| **Attorneys for Appellee:** | Thomas J. Frederick, of Winston & Strawn LLP, of Chicago, Bryan W. Kopman and Jeffrey M. Archambeault, of Kavanagh Grumley & Gorbold, LLC, of Joliet, and Brian A. Bosch, of Western Springs, for appellee. |