THIRD DIVISION
May 10, 2006

No. 1-05-2761

| | | |
|---|---|---|
| COMMERCE TRUST COMPANY, as Personal Representative of the Estates of Christine Marie White, deceased, and John Michael White, Deceased, and ADAM WHITE, KATHERINE WHITE, IAN WHITE and GIOVANNA WHITE, | ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | |
| AIR 1ST AVIATION COMPANIES, INC., a Corporation, | ) ) | |
| Defendant-Appellant | ) ) | |
| (Mitsubishi Heavy Industries, Ltd, a Corporation; Mitsubishi Heavy Industries America, Inc., a Corporation; Honeywell International, Inc., a Corporation; Woodward Governor Company, a Corporation; Stan Blaylock and Wayne Bates, | ) ) ) ) ) ) | Honorable Dennis J. Burke, |
| Defendants). | ) | Judge Presiding. |

JUSTICE KARNEZIS delivered the opinion of the court:

Christine Marie White and John Michael White (White) were killed when the small plane piloted by White crashed in New Mexico. Plaintiffs, the Commerce Trust Company, as the personal representative of the Whites's estates, and the Whites's four children, Adam White, Katherine White, Ian White and Giovanna White, filed a wrongful death and survivorship action in the circuit court of Cook County against manufacturers

and sellers of the plane and its component parts, including against defendant Air 1st Aviation Companies (Air 1st Aviation), the firm that sold the plane to White. Air 1st Aviation filed a motion to dismiss the action against it for lack of personal jurisdiction. The court denied the motion. On interlocutory appeal, Air 1st Aviation argues that the court erred in finding personal jurisdiction. We affirm.

BACKGROUND

On June 10, 2001, the Whites were killed when their plane, a model MU-2B-20 passenger aircraft manufactured by Mitsubishi, crashed in Cerrillos, New Mexico, upon approach to land in Santa Fe, New Mexico. White, a licensed private pilot, was flying the plane from Peoria County, Illinois, to Santa Fe. Illinois residents, the Whites resided in Woodford County, the county adjacent to Peoria County. An orthodontist, Michael had offices in Peoria County, Woodford County, Tazewell County, LaSalle County, Fulton County and Bureau County and business interests in several subdivisions and a shopping center in Peoria County.

White bought the plane from Air 1st Aviation, an aircraft brokerage firm, in South Carolina on April 27, 2001. He signed an agreement with Royal Robbins, president and coowner of Air 1st Aviation, for the purchase of the plane for $285,000. Pursuant to the agreement, White paid $75,000 by check and signed bills of sale for two aircraft he already owned, a Cessna and an Aerostar, transferring title to the two aircraft to Air 1st Aviation. The agreement provided that Air 1st Aviation would tender any offers to purchase it received on the two aircraft to White for his approval. Upon sale of one or

both aircraft, the $210,000 balance due under the agreement would be paid to Air 1st Aviation and any overage received by Air 1st Aviation would be remitted to White. White was to pay monthly interest at a 10% annualized rate on the unpaid balance. The full amount due under the agreement was due and payable on or before September 1, 2001.

White flew the Cessna to Air 1st Aviation in South Carolina and left it there when he took possession of the Mitsubishi. The Aerostar remained in Illinois pending repair of a broken propellor. After White's death, Air 1st Aviation submitted offers to purchase it received on the Cessna to the executor of White's estate. None were accepted. Air 1st Aviation sent a letter to the executor stating its claim to the $210,000 balance due under the agreement. In December 2001, Air 1st Aviation filed an action in the Aiken County, South Carolina, court of common pleas against White's estate for the balance and interest due under the agreement. In November 2002, Air 1st Aviation won a summary judgment motion against the estate for $241,986.68. The estate satisfied the judgment in June 2003.

In February 2003, plaintiffs filed a wrongful death and survival action in Cook County against defendants Honeywell International, Inc.; Mitsubishi Heavy Industries, Ltd.; Mitsubishi Heavy Industries America, Inc.; Woodward Governor Company; Stan Blaylock and Wayne Bates.[1] On June 9, 2003, in their 22-count first amended

---

[1] In an unpublished order, we previously affirmed the circuit court's denial of Honeywell's motion to transfer the case from Cook County to Peoria County on forum

complaint, plaintiffs added Air 1st Aviation as a defendant. The complaint alleged that Air 1st Aviation entered into a purchase and sale agreement with White under which White would receive the Mitsubishi MU-2B-20 aircraft in exchange for a sum of money and ownership of two aircraft located in Illinois and that, on April 27, 2001, White obtained ownership of the Mitsubishi pursuant to the agreement.

Product liability counts XVII and XVIII charged that, when the plane left Air 1st Aviation's control, it was defective, unreasonably dangerous and/or unfit for its intended use, proximately causing the crash that killed the Whites. Negligence counts XIX and XX charged that Air 1st Aviation breached its duty of care to decedents and plaintiffs by negligently selling a defective and unreasonably dangerous aircraft, selling an aircraft that had not been properly maintained or repaired and failing to provide adequate instructions regarding the aircraft, proximately causing the crash that killed the Whites. Breach of warranty counts XXI and XXII charged that Air 1st Aviation breached express

*non conveniens* grounds. See *Commerce Trust Co. v. Mitsubishi Heavy Industries, Inc.*, No. 1-04-0102 (August 11, 2004).

and/or implied warranties that the aircraft was airworthy, of merchantable quality, fit and safe for the purpose for which it was designed, manufactured, serviced and sold and free from defects, thereby proximately causing the crash that killed the Whites.

In August 2003, Air 1st Aviation filed a motion to dismiss for lack of personal jurisdiction pursuant to section 2-301 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-301 (West 2002)). It argued that it was a Georgia corporation with its principal place of business in South Carolina and registered offices in Georgia and South Carolina, it neither transacted business in Illinois nor specifically marketed its products to Illinois consumers and it did not have the requisite minimum contacts for jurisdiction under the Illinois and United States Constitutions. On August 2, 2005, the court denied the motion to dismiss. It found Air 1st Aviation submitted to personal jurisdiction in Illinois pursuant to sections 2-209(a)(2) and 2-209(a)(7) of the Illinois long-arm statute (735 ILCS 5/2-209(a)(2), (a)(7) (West 2002)) and the due process requirements of the United States and Illinois Constitutions. On September 1, 2005, Air 1st Aviation filed a timely petition in this court for leave to file an interlocutory appeal pursuant to Supreme Court Rule 306(a)(3) (166 Ill. 2d R. 306(a)(3)). We granted the petition.

<u>ANALYSIS</u>

The sole question in this case is whether the court erred in denying Air 1st Aviation's motion to dismiss for lack of personal jurisdiction. Plaintiffs have the burden of establishing a *prima facie* basis for *in personam* jurisdiction over Air 1st Aviation, a nonresident defendant. *Kostal v. Pinkus Dermatopathology Laboratory, P.C.*, 357 Ill.

App. 3d 381, 383, 827 N.E.2d 1031, 1033 (2005).  Where, as here, the circuit court decided the issue of jurisdiction without an evidentiary hearing, we review the court's decision *de novo. Kostal*, 357 Ill. App. 3d at 383, 827 N.E.2d at 1034.

In determining whether an Illinois court may assert personal jurisdiction over a nonresident defendant, we traditionally used a two-prong analysis, evaluating whether the facts of the case meet the requirements for (1) personal jurisdiction under the Illinois long-arm statute (735 ILCS 5/2-209 (West 2002)) and (2) due process under both the United States and Illinois Constitutions.  *Rollins v. Ellwood*, 141 Ill. 2d 244, 275, 565 N.E.2d 1302, 1314  (1990).  The long-arm statute enumerates 14 specific acts upon which jurisdiction over a nonresident defendant can be exercised.  Plaintiffs assert three of those acts as bases for jurisdiction over Air 1st Aviation: the transaction of any business within Illinois (section 2-209(a)(1)), the commission of a tortious act within Illinois (section 2-209(a)(2)) and the making or performance of any contract or promise substantially connected with Illinois (section 2-209(a)(7)).  Plaintiffs also assert that exercising personal jurisdiction over Air 1st Aviation meets the due process requirements of both the United States and Illinois Constitutions.

This two-step analysis is, however, no longer necessary.  *Kostal*, 357 Ill. App. 3d at 386, 827 N.E.2d at 1036.  Section 2-209(c) of the long-arm statute, commonly referred to as a "catch-all provision," extends the scope of the statute to allow a court to "exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States."  735 ILCS 5/2-209(c) (West

2002); *Kostal*, 357 Ill. App. 3d at 386, 827 N.E.2d at 1036. Section 2-209(c) is an independent basis for asserting personal jurisdiction over a defendant. *Kostal*, 357 Ill. App. 3d at 386, 827 N.E.2d at 1036. Therefore, where the contacts between an out-of-state defendant and Illinois plaintiff satisfy both federal and state due process concerns, the requirements of the long-arm statute have been met and no other inquiry, *i.e.*, whether the defendant did any of the acts enumerated in sections 2-209(a) (1) through (a) (14), is required. *Kostal*, 357 Ill. App. 3d at 387, 827 N.E.2d at 1036. Because a difference could exist between federal due process guarantees and Illinois due process guarantees, we must consider whether the court's exercise of personal jurisdiction satisfies *both* the federal and state due process guarantees. *Kostal*, 357 Ill. App. 3d at 387-88, 827 N.E.2d at 1037, following *Rollins*, 141 Ill. 2d at 275, 565 N.E.2d at 1316 ("[t]he Illinois Constitution contains its own guarantee of due process to all persons (Ill. Const.1970, art. I, § 2), a guarantee which stands separate and independent from the Federal guarantee of due process").

1. Dead-Man's Act

As a preliminary matter, we must consider Air 1st Aviation's argument that the court erred in not ruling on plaintiffs' motion to bar portions of Robbins' affidavit attached to Air 1st Aviation's motion to dismiss for violating the Dead-Man's Act (735 ILCS 5/8-201 (West 2002)). The Dead-Man's Act provides that, when a deceased is a party to a lawsuit, no adverse or interested party may testify on his or her behalf to any conversation with the deceased person or to any event that took place in the presence

of the deceased. 735 ILCS 5/8-201 (West 2002); *Moran v. Erickson*, 297 Ill. App. 3d 342, 360-61, 696 N.E.2d 780, 792 (1998). The contested evidence concerns Robbins' averments that White initiated the contact with Air 1st Aviation by calling Air 1st Aviation in South Carolina regarding the plane; White flew to South Carolina twice to negotiate the purchase of the plane; all oral and written agreements and negotiations occurred in South Carolina; and the agreement was signed by White and Robbins in South Carolina.

During the nonevidentiary hearing on the motion to dismiss, plaintiffs reiterated their objection to certain portions of Robbins' affidavit and also stated their objections to Robbins' deposition testimony on the same basis. Air 1st Aviation responded that an exception to the Dead-Man's Act, section 8-201(a) of the Act, applied because, in response to the motion to dismiss, plaintiffs submitted affidavits by White's personal assistant and White office receptionist, each of whom stated that she took telephone calls to White's office from Robbins and was "unaware of any reason that Zipper Robbins and Dr. White would correspond other than the purchase and sale of airplanes." Air 1st Aviation argued that by submission of the affidavits, plaintiffs waived any Dead-Man's Act objections to Robbins' testimony regarding those conversations. See *In re Estate of Sewart*, 274 Ill. App. 3d 298, 306, 652 N.E.2d 1151, 1157 (1995); *Moran*, 297 Ill. App. 3d at 361, 696 N.E.2d at 793.

Although the court and the parties discussed the Dead-Man's Act issue, the court did not rule on the motion to exclude Robbins' testimony. It is the responsibility of the

party filing a motion to request the trial court to rule on the motion, and when no ruling has been made on a motion, it is presumed to have been abandoned absent circumstances indicating otherwise. *People v. Flynn*, 341 Ill. App. 3d 813, 821-22, 792 N.E.2d 527, 535 (2003). Plaintiffs did not obtain a ruling on the motion to strike portions of Robbins' affidavit, either during the hearing on the motion to dismiss or during the court's extensive oral ruling on the motion to dismiss some three weeks later. Where, as here, a party moves to strike an affidavit, its failure to obtain a ruling on its motion to strike operates as a waiver of the objections to the affidavit. *Woolums v. Huss*, 323 Ill. App. 3d 628, 633, 752 N.E.2d 1219, 1224 (2001). Moreover, Dead-Man's Act objections notwithstanding, the contested evidence is solely relevant to White's contacts with South Carolina: his initial call to, two trips to, negotiations in and signing of the contract in South Carolina. Asserting personal jurisdiction is not a contest between two states, with the "winning" state being the one with the most contacts and thus able to assert jurisdiction. *Viktron Ltd. Partnership v. Program Data Inc.*, 326 Ill. App. 3d 111, 118, 759 N.E.2d 186, 194 (2001). Conduct that would provide a basis for jurisdiction over Air 1st Aviation in South Carolina is irrelevant in determining whether jurisdiction exists in Illinois. *Viktron Ltd. Partnership*, 326 Ill. App. 3d at 119, 759 N.E.2d at 194. The proper jurisdictional inquiry focuses on Air 1st Aviation's conduct relative to Illinois, not South Carolina. *Viktron Ltd. Partnership*, 326 Ill. App. 3d at 119, 759 N.E.2d at 194. The circuit court's detailed oral ruling did not rely on any of the contested evidence. Rather, the court properly focused on White's contacts with Illinois, not South Carolina.

9

## 2. Federal Due Process Standards

Assertion of personal jurisdiction over an out-of-state defendant satisfies federal due process guarantees so long as the defendant has sufficient "minimum contacts" with the forum state, such that maintaining an action there comports with " 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158 (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 85 L. Ed. 278, 283, 61 S. Ct. 339, 343 (1940). Those minimum contacts must involve "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 1298, 78 S. Ct. 1228, 1240 (1958). In order to find sufficient minimum contacts/purposeful availment, we must look to whether the defendant deliberately reached out and created continuing obligations between itself and residents of the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, 85 L. Ed. 2d 528, 541, 105 S. Ct. 2174, 2182 (1985). The contacts cannot be merely " 'random,' 'fortuitous,' 'attenuated' " or result from the unilateral actions of a third party. *Burger King Corp.*, 471 U.S. at 475, 85 L. Ed. 2d at 542, 105 S. Ct. at 2183, quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 79 L. Ed. 2d 790, 797, 104 S. Ct. 1473, 1478 (1984). The defendant's conduct and connections with the forum state must be such that "he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 501, 100 S. Ct. 559, 567 (1980).

In addition to establishing the nonresident defendant has sufficient minimum contacts with the forum state, a plaintiff must also establish that the cause of action arises out of those contacts and that it is reasonable to require the defendant to litigate in that state. *Burger King Corp.*, 471 U.S. at 471-78,  85 L. Ed. 2d at 540-44, 105 S. Ct. at 2181-85.

### a.  Minimum Contacts

In order to determine whether sufficient minimum contacts exist to support personal jurisdiction, we do not focus on the mere existence of a contract between the parties, nor on the place of contracting or of performance.  *Viktron Ltd. Partnership*, 326 Ill. App. 3d at 121, 759 N.E.2d at 196, citing *Burger King Corp.*, 471 U.S. at 478-79, 85 L. Ed. 2d at 544-45, 105 S. Ct. at 2185.  Rather, in assessing whether the defendant purposely established minimum contacts with the forum state, where, as here, a contract exists, we focus on prior negotiations and future consequences, as well as on the terms of the contract and the course of dealing between the parties.  *Viktron Ltd. Partnership*, 326 Ill. App. 3d at 121, 759 N.E.2d at 196, citing *Burger King Corp.*, 471 U.S. at 479, 85 L. Ed. 2d at 545, 105 S. Ct. at 2185. A defendant has accepted the privilege of conducting business within the forum state and can reasonably be required to litigate there if he engaged in significant activities within the forum state or created continuing obligations with a citizen of that state.  *Viktron Ltd. Partnership*, 326 Ill. App. 3d at 121, 759 N.E.2d at 196, citing *Burger King Corp.*, 471 U.S. at 475-76, 85 L. Ed. 2d at 543, 105 S. Ct. at 2184.

There is no question that Air 1st Aviation created such continuing obligations here. It created an ongoing business relationship with White, an Illinois resident. It entered into an agreement with White pursuant to which it agreed to try to sell White's Cessna and Aerostar planes in order to satisfy White's outstanding balance due under the agreement. Under the agreement, White continued to be obligated to Air 1st Aviation for the balance and interest due and Air 1st Aviation continued to be obligated to sell the planes, tender any offers to White in Illinois and, in the event of an overage in receipts, pay that overage to White in Illinois. Further, one of the planes, the Aerostar, was disabled and remained in Illinois pending further action by White to repair and transport it to South Carolina in satisfaction of his obligation.

Looking to prior negotiations and the course of dealing between the parties, there is no question that some of those negotiations occurred over the phone between Robbins in South Carolina and White in Illinois. Robbins testified that he called White in Illinois regarding the sale of the Mitsubishi. This is verified by the affidavits submitted by White's assistants, who testified to receiving at least six calls from Robbins to White.

The future consequences of the agreement are clear. Air 1st Aviation remained tied to White, an Illinois resident, until that resident repaired and transported the Aerostar, approved the sales of the Cessna and Aerostar and/or paid the amount due under the agreement by September 1, 2001. In order to retrieve the Aerostar and/or receive interest or payment under the agreement, Air 1st Aviation necessarily had to continue dealing with Illinois resident White, calling him in Illinois, submitting offers to

him in Illinois, paying overages to him in Illinois or receiving the monies from him in Illinois.

Air 1st Aviation clearly reached into Illinois to reach potential customers for its planes. Robbins testified that Air 1st Aviation advertised its plane brokerage services in national magazines, including the Wall Street Journal, Executive Controller and Trade-A-Plane, and maintained a website accessible to all. Further, here, Air 1st Aviation purposely reached out to one particular customer in Illinois.

Air 1st Aviation could reasonably expect to be haled into court in Illinois if it reneged on its agreement or something went wrong with the plane because the agreement was with an Illinois resident, the Mitsubishi it sold was in Illinois and part of the collateral for the agreement was still in Illinois. Air 1st Aviation communicated with White in Illinois before entering into the agreement; knew it was entering into the agreement with an Illinois resident because the agreement listed White's Illinois address; knew the Aerostar was still in Illinois; knew it had to submit offers to Illinois; knew it had to communicate with Illinois to get the balance due under the contract; and knew an Illinois resident would keep his new plane in Illinois, where he had kept his two other planes. Despite knowing all this, Air 1st Aviation still chose to enter into a continuing relationship with an Illinois resident. It purposefully established minimum contacts with Illinois and it should be no surprise that it is now being sued in Illinois.

### b. "Arising Out Of"

An action arises out of a defendant's contacts with a forum state where that

cause " 'lie[s] in the wake of the commercial activities by which the defendant submitted to the jurisdiction' of the forum state." *West Virginia Laborers Pension Trust Fund v. Caspersen*, 357 Ill. App. 3d 673, 681, 829 N.E.2d 843, 850 (2005), quoting *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.*, 906 F.2d 276, 281 (7th Cir. 1990). Plaintiffs' cause of action lies in the wake of Air 1st Aviation's contacts with Illinois. Plaintiffs charged that Air 1st Aviation breached its duty of care to the Whites and plaintiffs by negligently selling a defective and unreasonably dangerous aircraft, selling an aircraft that had not been properly maintained or repaired and failing to provide adequate instructions regarding the aircraft; Air 1st Aviation was negligent because the plane was defective, unreasonably dangerous and unfit for its intended purpose when it left Air 1st Aviation's control; and Air 1st Aviation breached express and/or implied warranties that the aircraft was airworthy, of merchantable quality, fit and safe for the purpose for which it was designed, manufactured, serviced and sold and free from defects; all of which proximately caused the crash that killed the Whites and injured plaintiffs.

These charges arise out of Air 1st Aviation's sale of the Mitsubishi to an Illinois resident. It was not coincidental that the Mitsubishi began its fatal flight in Illinois. As noted above, Air 1st Aviation knew it was selling the plane to an Illinois resident and that the plane would be housed in Illinois. The sale of the Mitsubishi was partly negotiated in Illinois and Air 1st Aviation had a continuing business relationship with the Illinois resident. The sale of the allegedly defective aircraft, failure to provide adequate

instruction and breach of any warranties are inextricably linked to Air 1st Aviation's sale of the aircraft to an Illinois resident and its continuing contacts with Illinois.

### c. Reasonableness

Five factors guide the inquiry into whether it is reasonable to require a nonresident defendant to litigate in the forum state: (1) the burden on the defendant to defend the action in the forum state; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the action; (5) the shared interests of the several states in advancing fundamental social policies. *Viktron Ltd. Partnership*, 326 Ill. App. 3d at 123, 759 N.E.2d at 198, citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 62 L. Ed. 2d 490, 498, 100 S. Ct. 559, 564 (1980). Once a plaintiff has established that the defendant purposely directed his activities at the forum state, the defendant must present a compelling case that litigating the dispute there would be unreasonable. *Viktron Ltd. Partnership*, 326 Ill. App. 3d at 123, 759 N.E.2d at 198, citing *Burger King Corp.*, 471 U.S. at 477, 85 L. Ed. 2d at 544, 105 S. Ct. at 2184-85. Plaintiffs have shown that Air 1st Aviation purposely directed its brokerage activities to Illinois and entered into a sale and continuing business relationship with an Illinois resident. Air 1st Aviation, therefore, must show that litigating this action arising out of that sale and relationship in Illinois would be unreasonable.

First, Air 1st Aviation has not shown that it would be unduly burdensome to defend in Illinois. It may be inconvenient for Robbins to leave "his small operation," but

that does not make it burdensome.  Second, Illinois obviously has a strong interest in providing its citizens with a convenient forum to litigate.  The fact that previous litigation regarding the agreement and construction of its terms has taken place in South Carolina has little bearing on whether Illinois has an interest in adjudicating the dispute.  The existence of the agreement and any payments due thereunder are no longer contested.  The instant action concerns entirely different issues regarding product liability, breach of warranty and negligence.  Similarly, with regard to the third factor, plaintiffs' interest in obtaining effective relief in Illinois is not impacted by the fact that an entirely different matter, payment due under the agreement, was adjudicated in South Carolina.  Any damages plaintiffs sustained were sustained in Illinois, not South Carolina.

Lastly, Air 1st Aviation advances no compelling argument regarding factors four and five, that litigating in South Carolina would best serve the interstate judicial system's interest in obtaining the most efficient resolution of the action or the shared interests of the several states in advancing fundamental social policies.  Air 1st Aviation posits that, because the agreement has been adjudicated in South Carolina with counsel from both sides already familiar with the case, it would be efficient for plaintiffs to litigate against Air 1st Aviation in South Carolina while continuing to litigate against the other defendants in Illinois.  Since a different issue was litigated in South Carolina and requiring plaintiffs here to litigate in two forums would result in inefficient, duplicative litigation, Air 1st Aviation's argument fails.

In sum, Air 1st Aviation has sufficient "minimum contacts" with Illinois, plaintiffs'

cause of action arises out of those contacts and it is reasonable to require Air 1st Aviation to defend in Illinois such that maintaining an action against Air 1st Aviation in Illinois comports with traditional notions of fair play and substantial justice under the federal due process standards.

### 3. Illinois Due Process Standards

For many of the same reasons that asserting personal jurisdiction over Air 1st Aviation in Illinois would not offend federal due process guarantees, Illinois due process guarantees are satisfied. Under the Illinois Constitution's guarantee of due process, "[j]urisdiction is to be asserted only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins*, 141 Ill. 2d at 275, 565 N.E.2d at 1316. Air 1st Aviation's acts in Illinois, its national advertising and its entering into an agreement and ongoing relationship with and supplying a plane to an Illinois citizen affected many Illinois interests, including the health and safety of that citizen and his wife, the well-being of his children and the safety of Illinois aircraft and air traffic. It was entirely foreseeable that if an injury happened to White or his family as a result of his purchase of the plane from Air 1st Aviation, that injury would primarily be felt in Illinois. It is, therefore, fair, just and reasonable to require Air 1st Aviation to defend a wrongful death and survival action in Illinois.

For the reasons stated above, we affirm the decision of the circuit court denying

1-05-2761

Air 1st Aviation's motion to dismiss this cause for lack of personal jurisdiction.

Affirmed.  HOFFMAN, P.J.,  and ERICKSON, J., concur.