2022 IL App (1st) 200754

FIFTH DIVISION
January 28, 2022

No. 1-20-0754

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| KRISTEN B., CHELSEA J., QUINCITA F., and KHARIS M., | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | |
| THE DEPARTMENT OF CHILDREN AND FAMILY SERVICES and MARC D. SMITH, in His Official Capacity as Acting Director of Children and Family Services, | ) ) ) ) ) | No. 2020 CH 04100 |
| Defendants-Appellees | ) ) | |
| (T.B., W.C., J.T., Da. G., Do. G, and V.M., Intervenors-Appellees). | ) ) | Honorable Caroline Kate Moreland, Judge Presiding. |

JUSTICE CONNORS delivered the judgment of the court, with opinion.
Justices Hoffman and Cunningham concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiffs Kristen B., Chelsea J., Quincita F., and Kharis M. are mothers of minor children who were temporarily removed from plaintiffs' custody by the State and were living in foster care. Plaintiffs were granted supervised visits by the child protection division of the circuit court of Cook County. On March 25, 2020, one of the defendants, the Illinois Department of Children and

Family Services (DCFS), issued Action Transmittal 2020.02 (Updated) (March Action Transmittal), which suspended in-person supervised visits due to the COVID-19 pandemic. Plaintiffs filed a complaint in the chancery division of the circuit court that challenged the March Action Transmittal. The circuit court dismissed the complaint under section 2-619(a)(3) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(3) (West 2018)). On appeal, the parties dispute whether the cause is moot and whether the chancery action was void. Plaintiffs also contend that (1) the Code does not allow an intervenor to move to dismiss a complaint, (2) the chancery complaint action did not involve the same parties and same cause as any action pending in the child protection division, (3) the circuit court should have considered plaintiffs' motion for leave to amend the complaint, and (4) the chancery complaint should have been dismissed without prejudice. We agree with plaintiffs that the dismissal should have been without prejudice and affirm the judgment as so modified.

¶ 2                                    I. BACKGROUND

¶ 3     The March Action Transmittal noted that the country and the citizens of Illinois were "currently experiencing an unprecedented public health crisis." In light of "the extreme circumstances" related to COVID-19 and the need to ensure that children's health was protected through social distancing, DCFS suspended all in-person supervised visits between parents and children in foster care and all sibling visits. DCFS directed staff and caregivers to identify alternative ways to allow parent-child and sibling contact during the crisis, including via phone calls and videoconferencing. Unsupervised visits were allowed to continue with the use of a pre-screening tool. At the time, plaintiffs were represented in their child protection cases by assistant public defenders.

¶ 4                              A. Circuit Court Proceedings

¶ 5      On May 6, 2020, plaintiffs, via an assistant public defender, filed a complaint in the chancery division of the circuit court that stated in part as follows. Under various court orders, DCFS was required to provide in-person supervised visits to plaintiffs and their children. Because of the March Action Transmittal, defendants—DCFS and its acting director (collectively, the DCFS defendants)—refused to provide any in-person supervised visits. Each plaintiff wanted to continue the visits and asserted that the lack of visits was harmful to plaintiffs' children. Plaintiffs sought an injunction and a declaratory judgment of the parties' rights and responsibilities under the March Action Transmittal. Plaintiffs also asserted a claim under section 1983 of the federal Civil Rights Act (42 U.S.C. § 1983 (2018)), stating that plaintiffs suffered damages from the March Action Transmittal and requesting such other and further relief as the court deemed equitable and just.

¶ 6      Plaintiffs also filed an emergency motion for a temporary restraining order (TRO) and preliminary injunction. Plaintiffs asserted in part that they had no adequate remedy in their pending child protection cases because the presiding judge had issued a gatekeeping order that limited access to the courts to emergencies. Further, plaintiffs were not allowed to proceed on an emergency basis on their motions to enforce existing visitation orders. Attached to the emergency motion were affidavits from plaintiffs' attorneys in their child protection cases. The affidavits indicated that on certain dates in April 2020, the attorneys for Buxton, Joyce, and Fleming filed emergency motions in the child protection division to restore visits. Buxton's hearing was scheduled for June 3, 2020, Joyce's hearing was scheduled for May 22, 2020, and Fleming's hearing was scheduled for May 29, 2020. McDonald's attorney tried to file an emergency motion

in the child protection division to restore visits, but was told the motion would not be heard because a request for in-person visits was not an emergency.

¶ 7    On May 11, 2020, the Cook County public guardian, as the children's attorney and guardian *ad litem*, moved for leave to intervene, stating that plaintiffs' children were each the subject of a pending proceeding in the child protection division. The children had an interest in ensuring that decisions about visits were based on individualized determinations that took into account all relevant factors. The public guardian's motion recalled the histories of the children's child protection cases and asserted that plaintiffs' chancery complaint did not consider the reasons why the children were removed from their parents' custody and the reasons the visits had to be supervised. The motion noted that the temporary custody order for McDonald's child was scheduled for rehearing on May 22, 2020, and any party could request a review of the parent-child visitation plan during a temporary custody hearing.

¶ 8    Attached to the public guardian's motion for leave to intervene was a motion to dismiss under section 2-619(a)(3) of the Code because the chancery action involved the same parties and same cause as the pending child protection cases. The motion to dismiss further stated as follows. In each plaintiff's case, the child protection division had entered a visitation order after considering all relevant evidence. Three of the plaintiffs had pending motions for in-person visits in the child protection division. The fourth plaintiff's case was in the midst of a temporary custody hearing. Also, the court in the child protection cases had ongoing jurisdiction to review and modify parent-child visitation plans and orders for children. The child protection division was best suited to craft individualized solutions for the children and their parents that maintained health and safety.

¶ 9    At a hearing in the chancery division on May 14, 2020, plaintiffs' counsel objected to the public guardian intervening, stating that there was no emergency basis for doing so. Further, the

children's interests would be adequately represented by the DCFS defendants, who had legal responsibility for the children's health and welfare. The court granted the public guardian's motion for leave to intervene.

¶ 10    The hearing turned to the public guardian's motion to dismiss. Counsel for the DCFS defendants stated that she agreed with the motion and that she also intended to file a motion to dismiss. In arguing for dismissal, the public guardian stated that visitation was intrinsic to child protection cases and plaintiffs' attorneys had filed motions in their child protection cases for in-person visits. The public guardian discussed the background of plaintiffs' child protection cases, which he stated had complex facts. In response, plaintiffs' counsel stated that there was ongoing harm because the emergency motions were not being heard in the child protection division. Further, the child protection division did not grant injunctions or have the power to hear section 1983 claims—a point disputed by the public guardian. Plaintiffs' counsel acknowledged that the chancery matter was not a class action and the complaint only sought a remedy for the four named plaintiffs in the complaint.

¶ 11    Plaintiffs filed two motions in between the hearing and the court's subsequent order on the motion to dismiss. One motion, filed on May 15, 2020, was for leave to file an amended complaint that added a class action count and requested that the court certify a class of parents whose in-person supervised visits were suspended by the March Action Transmittal. The second motion, filed on May 18, 2020, was an emergency motion to supplement the record with a special order from the child protection division that listed continuance dates for cases previously scheduled for March 17, 2020, through June 5, 2020. The record does not indicate that the circuit court ruled on either motion.

¶ 12    On May 18, 2020, the chancery division issued a written order that dismissed the complaint with prejudice under section 2-619(a)(3) of the Code and found that plaintiffs' motion for a TRO was moot. The court stated that all of the plaintiffs had upcoming hearings in the child protection division on individual motions to compel in-person visits. Since plaintiffs had pending abuse and/or neglect cases in the child protection division, that court addressed the very issues presented in the chancery matter. The child protection division was the appropriate forum for plaintiffs' grievances. Plaintiffs did not present any unique issues that the child protection division was unable to handle in its ordinary proceedings.

¶ 13    Plaintiffs filed a notice of appeal on June 11, 2020.

¶ 14                              B. Motion to Dismiss the Appeal as Moot

¶ 15    While this appeal was pending, the public guardian and DCFS defendants separately moved to dismiss the appeal as moot. In part, the public guardian stated that the March Action Transmittal was no longer in effect. On June 15, 2020, the DCFS defendants issued Action Transmittal 2020.07 (June Action Transmittal), which rescinded and superseded the March Action Transmittal and set out a process for implementing in-person visits between parents and children in foster care. The June Action Transmittal stated that DCFS's guidance "has been and will continued to be impacted by the status of the COVID-19 public health crisis in Illinois. Accordingly, [DCFS] may amend its guidance in the future and will continue to assess the safety of in-person contacts on a case-by-case basis." The public guardian also asserted that due to developments in their cases, plaintiffs had achieved their goal of resuming in-person visits. For three of the plaintiffs, in-person visits resumed in July and August 2020. The child of the fourth plaintiff returned home in June 2020 under an order of protection. Court orders for plaintiffs' cases were attached to the motion.

¶ 16    In their motion to dismiss the appeal, the DCFS defendants asserted in part that nothing indicated that DCFS would again have to implement guidance like the March Action Transmittal. If it did, plaintiffs would have recourse in their individual child protection cases.

¶ 17    Plaintiffs responded in part that the appeal was not moot because they sought monetary damages. Plaintiffs also raised certain exceptions to the mootness doctrine.

¶ 18    On October 5, 2020, this court denied the public guardian's and DCFS defendants' motions to dismiss the appeal.

¶ 19                              II. ANALYSIS

¶ 20                    A. Arguments for Dismissing the Appeal

¶ 21    Initially, we address the public guardian's and DCFS defendants' contentions that this appeal should be dismissed. The public guardian and DCFS defendants again assert that the appeal is moot. The DCFS defendants also state that the underlying action is void *ab initio* because it was filed outside of the scope of section 3-4006 of the Counties Code (55 ILCS 5/3-4006 (West 2018) (duties of the public defender)).

¶ 22                              1. Mootness

¶ 23    As before, the public guardian contends that the appeal is moot because the March Action Transmittal was rescinded and because of developments in plaintiffs' child protection cases. The public guardian also posits that it is unlikely that a ban on supervised visits would be implemented again. The DCFS defendants note that DCFS has issued additional directives related to in-person visits since March 2020, but none reverted to suspending visits. The DCFS defendants further state that the section 1983 count in plaintiffs' complaint did not include damages in its prayer for relief and because Acting Director Smith was named in his official capacity, damages would be barred by sovereign immunity. Plaintiffs assert that the case is not moot to the extent that damages were

pled and their complaint sufficiently suggested the potential for monetary damages. That aside, plaintiffs note that, on remand, they could make curative amendments to the complaint. We do not need to address whether a request for damages prevents the appeal from being moot. Another ground raised by plaintiffs is dispositive—the voluntary cessation exception.

¶ 24   An appeal is moot if there is no actual controversy or if events have occurred that make it impossible to grant the complaining party effectual relief. *Fisch v. Loews Cineplex Theaters, Inc.*, 365 Ill. App. 3d 537, 539 (2005). Generally, Illinois courts do not decide moot questions, render advisory opinions, or consider issues when the result will not be affected no matter how those issues are decided. *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009). Courts should not resolve an issue just to establish precedent or guide future actions. *Fisch*, 365 Ill. App. 3d at 540.

¶ 25   Generally, a defendant's act of voluntarily ceasing the allegedly wrongful conduct does not make a case moot "unless it becomes absolutely clear that such behavior could not reasonably be expected to recur." *Cohan v. Citicorp*, 266 Ill. App. 3d 626, 629 (1993). This court has stated that a public defendant need only show "that there is no basis for concluding it will return to its old tricks once the coast is clear." (Internal quotation marks omitted.) *Hanna v. City of Chicago*, 382 Ill. App. 3d 672, 680 (2008) (quoting *La Salle National Bank, N.A. v. City of Lake Forest*, 297 Ill. App. 3d 36, 45 (1998)). "[G]reater stock [is placed] in [public officials'] acts of self-correction, so long as they appear genuine." (Internal quotation marks omitted.) *Id.* (quoting *Magnuson v. City of Hickory Hills*, 933 F.2d 562, 565 (7th Cir. 1991)).

¶ 26   Applying the voluntary cessation doctrine, federal courts have found that challenges to expired COVID-19 restrictions are not moot. See *Cassell v. Snyders*, 990 F.3d 539, 546-47 (7th Cir. 2021) (challenge to expired 10-person limit on gatherings "[fell] short of true mootness," and given the uncertainty about the future course of the pandemic, challenge was not definitively

rendered moot); *Elim Romanian Pentecostal Church v. Pritzker*, 962 F.3d 341, 345 (7th Cir. 2020) (challenge was not moot where it was not "absolutely clear" that the terms of an executive order that limited gatherings would never be restored); *Haney v. Pritzker*,[1] No. 20 C 3653, 2021 WL 4402418, at \*7 (N.D. Ill. Sept. 9, 2021) (challenge to pandemic-related closure of all Community Day Services programs was not moot where, although many factors suggested that the chance of renewed restriction was minimal, there was still uncertainty about the future course of the pandemic, and so it was not absolutely clear that the restrictions could not reasonably be expected to recur).

¶ 27 A similar uncertainty to what was noted in *Cassell*, *Elim Pentecostal Church*, and *Haney* persists here. We recognize that Illinois's response to the pandemic has evolved since March 2020. At the time the March Action Transmittal was issued, Illinois was under a stay-at-home order. See Mary Hansen, *The Regions and Phases of Pritzker's Plan to Reopen Illinois* (May 8, 2020), NPR Illinois, http://www.nprillinois.org/illinois/2020-05-08/the-regions-and-phases-of-pritzkers-plan-to-reopen-illinois [https://perma.cc/SL2G-UKB6]. Currently, the entire state is in what is known as Phase 5, where all sectors of the economy have reopened. See State of Illinois Coronavirus Response, Regional Phase Dashboard, http://coronavirus.illinois.gov/restore-illinois/regional-dashboard.html (last visited Jan. 11, 2022) [https://perma.cc/8YAE-GG48]. Approximately 64% of Illinois residents are fully vaccinated. See Tracking Coronavirus in Illinois: Latest Map and Case Count, N.Y. Times, https://www.nytimes.com/interactive/2021/us/illinois-covid-cases.html (last visited Jan. 12, 2022) [https://perma.cc/7KXT-6L5V]. Children as young as five years old are now eligible for the vaccine.

---

[1]Unpublished federal decisions are not precedential, but this court may use the same reasoning and logic where it is persuasive. *Solargenix Energy, LLC v. Acciona, S.A.*, 2014 IL App (1st) 123403, ¶ 39 n.10.

¶ 28    While the threat of suspending in-person supervised visits is far less than previously, that threat is not zero. The pandemic is not over. As of the time of this writing, cases of COVID-19 are surging. See Tracking Coronavirus in Illinois: Latest Map and Case Count, N.Y. Times, https://www.nytimes.com/interactive/2021/us/illinois-covid-cases.html (last visited Jan. 12, 2022) [https://perma.cc/7KXT-6L5V]. A significant percentage of Illinois residents are not vaccinated. Given the ongoing uncertainty about the course of the pandemic, we cannot say there is no basis to conclude that DCFS will never again suspend in-person supervised visits. Plaintiffs' challenge is not moot.

¶ 29                                    2. Public Defender Statute

¶ 30    As another reason to dismiss the appeal, the DCFS defendants contend that the underlying action was void *ab initio* because it was filed outside the scope of section 3-4006 of the Counties Code (55 ILCS 5/3-4006 (West 2018)), which confines the scope of the public defender's duties to a narrow category of cases. The DCFS defendants argue that, based on statutory language from the Counties Code and Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2018)), the public defender may not represent parents outside of child protection proceedings.

¶ 31    We do not need to resolve whether the assistant public defender that represented plaintiffs in the chancery action ran afoul of his statutory duties. Even if he did, any deviation would not make the underlying action void. Whether a judgment is void or voidable is a matter of jurisdiction. *LVNV Funding, LLC v. Trice*, 2015 IL 116129, ¶ 27. Jurisdiction consists of two elements: subject matter jurisdiction and personal jurisdiction. *People v. Castleberry*, 2015 IL 116916, ¶ 12. Any judgment from a court that does not have jurisdiction is void and may be collaterally attacked. *In re Marriage of Mitchell*, 181 Ill. 2d 169, 174 (1998). In contrast, an erroneous judgment from a court with jurisdiction is only voidable and may not be collaterally attacked. *Id.* The DCFS

defendants do not identify the type of jurisdiction that the circuit court allegedly lacked. We presume their challenge is to the court's subject matter jurisdiction, which is the power "to hear and determine cases of the general class to which the proceeding belongs." (Internal quotation marks omitted.) *Castleberry*, 2015 IL 116916, ¶ 12. Whether a circuit court has subject matter jurisdiction to entertain a claim is a question of law that we review *de novo*. *Goodwin v. Matthews*, 2018 IL App (1st) 172141, ¶ 13.

¶ 32    Under the current Illinois Constitution, circuit courts have original jurisdiction over all justiciable matters and the power to review administrative actions as provided by law. *LVNV Funding, LLC*, 2015 IL 116129, ¶ 30 (citing Ill. Const. 1970, art. VI, § 9). A " 'justiciable matter' is a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 335 (2002). Except in the area of administrative review, the jurisdiction of the circuit court flows from the constitution and not the legislature. *Id.* Ultimately, the test for subject matter jurisdiction is found in the nature of the case as made by the complaint and the relief sought. *Id.* at 334-35.

¶ 33    The circuit court's subject matter jurisdiction did not depend on the public defender statute or any other statute. Plaintiffs' complaint and their requested relief presented a justiciable matter, giving the circuit court subject matter jurisdiction. Even if the assistant public defender was not allowed to represent plaintiffs in the chancery division—a question we do not decide here—that deviation from the statute would not deprive the circuit court of subject matter jurisdiction. See *Goodwin*, 2018 IL App (1st) 172141, ¶ 18 (deviation from statutory procedure does not deprive the circuit court of subject matter jurisdiction). The underlying action was not void *ab initio*, and there is no reason to dismiss the appeal.

¶ 34                    C. Dismissal under Section 2-619(a)(3) of the Code

¶ 35    We next address plaintiffs' arguments relating to dismissal under section 2-619(a)(3) of the Code. Plaintiffs contend that an intervenor may not move to dismiss a complaint under section 2-619(a) of the Code and the chancery action did not involve the same parties or same cause as the child protection action.

¶ 36                         1. Rights of an Intervenor

¶ 37    Plaintiffs assert that under section 2-619(a) of the Code, a defendant may file a motion to dismiss, but an intervenor is not a defendant. Plaintiffs acknowledge that the Code provides that an intervenor has all the rights of an original party but contend that this does not transform an intervenor into a defendant who may be sued or enjoined.

¶ 38    The public guardian states that this matter is forfeited. We disagree. Parties must preserve issues or claims for appeal, but they do not need to limit their arguments on appeal to the same ones that were made below. *Brunton v. Kruger*, 2015 IL 117663, ¶ 76. Plaintiffs objected to the public guardian's motion for leave to intervene, and the dismissal of their complaint under section 2-619(a)(3) of the Code. Though plaintiffs have not forfeited the argument that an intervenor may not move to dismiss, it is not a basis for reversal.

¶ 39    Section 2-619(a)(3) of the Code states that a "[d]efendant may *** file a motion for dismissal of the action *** upon any of the following grounds. *** (3) That there is another action pending between the same parties for the same cause." 735 ILCS 5/2-619(a)(3) (West 2018). Section 2-408(a)(2) of the Code states that "anyone shall be permitted as of right to intervene in an action *** when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by an order or judgment in the action." 735

ILCS 5/2-408(a)(2) (West 2018). An intervenor "shall have all the rights of an original party," subject to certain exceptions that are not at issue here. 735 ILCS 5/2-408(f) (West 2018).

¶ 40    Plaintiffs raise an issue of statutory construction, which we review *de novo*. *Hernandez v. Lifeline Ambulance, LLC*, 2019 IL App (1st) 180696, ¶ 10. Our objective is to ascertain and give effect to the legislature's intent, which is best indicated by the statute's plain and ordinary meaning. *Id.* Section 2-408(f) of the Code means what it plainly says: once a party is granted the status of an intervenor, that party may do whatever a plaintiff or defendant could do. See *In re Petition for Submittal of the Question of Annexation to the Corporate Authorities of the City of Joliet*, 282 Ill. App. 3d 684, 691 (1996) ("an intervenor can take any action the plaintiff would be entitled to do, even if the plaintiff does not do so"); *Redmond v. Devine*, 152 Ill. App. 3d 68, 76 (1987) (because an intervenor has all the rights of an original party, it could file a section 2-1401 petition to set aside a default judgment). The circuit court properly allowed the public guardian, as an intervenor, to move to dismiss under section 2-619(a)(3) of the Code.

¶ 41                              2. Same Parties and Same Cause

¶ 42    Plaintiffs next contend that chancery action did not involve the same parties and same cause as any action in the child protection division. According to plaintiffs, DCFS does not have the status of a party in child protection cases. Plaintiffs further assert that the child protection action, which consisted of the alleged neglect matters that were initiated by petitions for adjudication of wardship, did not arise from the same transaction or occurrence as the chancery action, which centered on the harm to all mothers from the March Action Transmittal. Plaintiffs argue that the child protection division does not have authority to grant injunctions against DCFS. Also, plaintiffs' section 1983 count sought to recover for past actions, including damages, while the emergency motions to compel visitation in the child protection division were forward-looking

only. Plaintiffs assert that the various theories of constitutional liability raised in the chancery complaint would not be considered in the motions in the child protection division. Plaintiffs state that even where two actions are for the same cause, a factor to consider is the absence of a likelihood of obtaining complete relief in the other jurisdiction.

¶ 43    As noted above, section 2-619(a)(3) of the Code allows a defendant to move to dismiss a complaint because "there is another action pending between the same parties for the same cause." 735 ILCS 5/2-619(a)(3) (West 2018). Section 2-619(a)(3) " 'is a procedural device designed to avoid duplicative litigation.' " *Schacht v. Lome*, 2016 IL App (1st) 141931, ¶ 34 (quoting *Whittmanhart, Inc. v. CA, Inc.*, 402 Ill. App. 3d 848, 852 (2010)). The movant must demonstrate with clear and convincing evidence that the two actions involve the same parties and the same cause. *Performance Network Solutions, Inc. v. Cyberklix US, Inc.*, 2012 IL App (1st) 110137, ¶ 29. Section 2-619(a)(3) does not require automatic dismissal. *In re M.K.*, 284 Ill. App. 3d 449, 456 (1996). Even if the movant meets its burden, the circuit court has the discretion to grant or deny the motion. *Hapag-Lloyd (America), Inc. v. Home Insurance Co.*, 312 Ill. App. 3d 1087, 1091 (2000).

¶ 44    Plaintiffs suggest that we review the dismissal *de novo* to the extent that the circuit court made its judgment on the pleadings without conducting a factual inquiry, making a discretionary analysis, or weighing evidence. Plaintiffs cite *Miller v. Thomas*, 275 Ill. App. 3d 779, 786-87 (1995), which involved a dismissal under sections 2-619(a)(2) and 2-619(a)(9) of the Code. We see no reason to depart from the abuse of discretion standard of review that applies to dismissals under section 2-619(a)(3) of the Code. Though motions to dismiss are generally reviewed *de novo* because they do not require the circuit court to weigh facts or determine credibility, a section 2-619(a)(3) dismissal is inherently procedural and urges the circuit court to weigh several factors.

*Combined Insurance Co. of America v. Certain Underwriters at Lloyd's, London*, 356 Ill. App. 3d 749, 753 (2005). The circuit court's written order reflects that it indeed weighed several factors before dismissing plaintiffs' complaint. We will review the court's decision for an abuse of discretion. *Hapag-Lloyd (America), Inc.*, 312 Ill. App. 3d at 1091. A court abuses its discretion when its ruling is arbitrary, fanciful, or unreasonable or when no reasonable person would take the same view. *Schacht*, 2016 IL App (1st) 141931, ¶ 34.

¶ 45     Actions involve the same parties "where the litigants' interests are sufficiently similar, even though the litigants differ in name or number." (Internal quotation marks omitted.) *Performance Network Solutions, Inc.*, 2012 IL App (1st) 110137, ¶ 30 (quoting *Combined Insurance Co. of America*, 356 Ill. App. 3d at 754). In a child protection action, "the minor who is the subject of the proceeding" and the minor's "parents, guardian, legal custody or responsible relative who are parties respondent have the right to be present" and be heard. 705 ILCS 405/1-5(1) (West 2018). In the chancery action, plaintiffs sued DCFS and its acting director. Plaintiffs assert that the same parties are not involved in the two proceedings because DCFS is not technically a party in the child protection case. Plaintiffs state that, under section 1-5(2)(a) of the Juvenile Court Act (705 ILCS 405/1-5(2)(a) (West 2018)), representatives of agencies interested in the minor—such as DCFS—have a right to be heard; however, they do "not thereby become a party to the proceeding."

¶ 46     DCFS had similar interests in both the child protection and chancery actions. DCFS is charged with providing child welfare services. 20 ILCS 505/5 (West 2018). Among other duties, DCFS protects and promotes the health, safety, and welfare of children and provides services so children can return to their families. 20 ILCS 505/5(a)(3)(A), (D) (West 2018). DCFS's duty to protect children in the context of the COVID-19 pandemic was at issue in both cases. We find no error in the court's finding that the same parties were involved in both actions.

¶ 47    Actions involve the same cause when the requested relief is based on substantially the same set of facts. *Combined Insurance Co. of America*, 356 Ill. App. 3d at 753. The central inquiry is "whether the two actions arise out of the same transaction or occurrence [citation], not whether the legal theory, issues, burden of proof or relief sought materially differ between the two actions." (Internal quotation marks omitted.) *Id.* (quoting *Kapoor v. Fujisawa Pharmaceutical Co.*, 298 Ill. App. 3d 780, 786 (1998)). The purpose of the actions does not need to be identical—it is enough if there is a substantial similarity of issues. *Id.*

¶ 48    The child protection action consisted of the abuse and/or neglect proceedings involving the plaintiffs' children, of which plaintiffs' emergency motions to compel in-person visits were a part. As background, the Juvenile Court Act sets out a step-by-step process to decide whether children should be removed from their parents and made wards of the court. *In re Arthur H.*, 212 Ill. 2d 441, 462 (2004) (citing 705 ILCS 405/1-1 *et seq.* (West 2000)). Children may be removed from their parents' custody only when their safety or welfare—or the protection of the public—cannot be adequately safeguarded without removal. 705 ILCS 405/1-2 (West 2018). As part of its duties in child protection proceedings, DCFS must file a parent-child visiting plan, with "the frequency, duration, and locations of visitation *** measured by the needs of the child and family." 705 ILCS 405/2-10(2) (West 2018). Further, DCFS may restrict or terminate visits without a court order if DCFS believes that the visits would be contrary to the child's health, safety, and welfare. *Id.* Plaintiffs' child protection proceedings, both generally and with respect to their motions to compel in-person visits, involved planning and implementing visits. In plaintiffs' cases, it was determined that supervised visits best met the relevant needs. In the chancery action, plaintiffs challenged the suspension of visits. Based on the framework of the child protection proceedings, the same facts

would be at issue in both actions—what visits should look like in the context of the ongoing circumstances, including the COVID-19 pandemic.

¶ 49 Plaintiffs highlight the specific relief requested in the chancery action: a declaratory judgment, injunction, and potential monetary damages. The parties dispute whether damages were properly pled, but we need not resolve that matter because whether the child protection division could grant the same relief as the chancery division is beside the point. The circuit court's analysis under section 2-619(a)(3) does not depend on the relief requested or the theories raised. See *Katherine M. v. Ryder*, 254 Ill. App. 3d 479, 487 (1993) (that the plaintiffs were unable to assert state law claims in federal court was irrelevant). Even if the chancery complaint raised additional issues and sought different relief, the two actions were still substantially similar. In both actions, plaintiffs desired visits with their children, which would have to be fashioned by taking a variety of needs and circumstances into account. See *Hapag-Lloyd (America), Inc.*, 312 Ill. App. 3d at 1095-96 (that a state suit raised additional claims from a federal suit and those claims involved different facts were "of little importance" to whether the suits were for the same cause).

¶ 50 Plaintiffs also state that the circuit court should not have relied on the upcoming hearing dates for plaintiffs' emergency motions to compel in-person visits. Plaintiffs assert that there was no scheduled hearing date for plaintiff McDonald and the dates for the other plaintiffs were illusory. Plaintiffs note that by the time of the chancery division's dismissal, it was apparent that there would be continuances.

¶ 51 On the same date that the circuit court dismissed the chancery complaint, plaintiffs filed an emergency motion to supplement the record with the continuance dates from the child protection division. The record does not indicate that the circuit court ruled on the motion. It is the responsibility of the party filing a motion to request a ruling. When no ruling has been made on

the motion, it is presumed to have been abandoned unless there are circumstances that indicate otherwise. *Commerce Trust Co. v. Air 1st Aviation Cos.*, 366 Ill. App. 3d 135, 142 (2006). Whether the circuit court was aware of the updated continuance dates is unclear. Plaintiffs abandoned their motion by failing to obtain a ruling on it. At the same time, the record before the circuit court indicated that normal court operations were curtailed in spring 2020. We acknowledge how challenging the situation was to all involved and that virtual parent-child visits are far from ideal. Still, the delays in the child protection division were not enough to avoid dismissal. Plaintiffs did not show that the child protection division was ineffective or unable to address plaintiffs' visitation issues. See *In re M.K.*, 284 Ill. App. 3d at 459 (alleged lack of progress in federal litigation did not warrant reversing dismissal where the party failed to demonstrate that the federal forum was ineffective or that the parties in the federal forum abandoned their efforts). Indeed, three of the plaintiffs resumed in-person visits in summer 2020, and the fourth plaintiff's child returned home. The delay in the child protection proceedings was not a reason to maintain the chancery action.

¶ 52　Plaintiffs also assert that the public guardian failed to provide a sufficient record establishing that the two actions were for the same cause. Plaintiffs state that the public guardian did not provide the circuit court with any of the emergency motions to compel visitation that were filed in the child protection court and only provided oral representations that the same issues were pending.

¶ 53　The public guardian responds that plaintiffs forfeited this matter. Again, we require parties to preserve issues or claims for appeal, and we do not require parties to limit their arguments to the same arguments that were made below. *Brunton*, 2015 IL 117663, ¶ 76. Plaintiffs' argument about the missing motions supports its claim that the circuit court abused its discretion and is not forfeited.

¶ 54    Still, the circuit court did not need the actual emergency motions to compel in-person visits to find that the two actions involved the same parties for the same cause. The purpose of child protection proceedings and the fact that the child protection proceedings were ongoing—though delayed—was sufficient for the circuit court's analysis. Ultimately, the circuit court must weigh the prejudice to the nonmovant if the section 2-619(a)(3) motion is granted against the policy of avoiding duplicative litigation. *Overnite Transportation Co. v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL-CIO*, 332 Ill. App. 3d 69, 78 (2002). Based on the information presented to the court about plaintiffs' child protection proceedings, the circuit court did not abuse its discretion when it dismissed the chancery complaint.

¶ 55                    D. Motion for Leave to Amend the Complaint

¶ 56    Next, plaintiffs contend that the circuit court should not have dismissed the case without considering their motion for leave to amend the complaint, which added a class action count. Plaintiffs state that if the court was not aware of the proposed amendment, then there was a breakdown in communication that warrants vacating the judgment and reopening the matter so that the amendment can be considered.

¶ 57    Plaintiffs filed a motion for leave to amend their complaint on May 15, 2020, in between the hearing on the section 2-619(a)(3) motion and the circuit court's written order that dismissed the complaint. The record does not indicate that the circuit court ruled on the motion for leave to amend. As stated above, the party filing a motion is responsible for requesting that the circuit court rule on it. *Commerce Trust Co.*, 366 Ill. App. 3d at 142. Also, "[a] subsequently filed notice of appeal following the failure by a litigant to obtain a ruling on a motion serves as an abandonment of the previously filed motion." *Rodriguez v. Illinois Prisoner Review Board*, 376 Ill. App. 3d 429,

433 (2007). Here, plaintiffs filed a notice of appeal after filing—but not obtaining a ruling on— their motion for leave to amend the complaint. Plaintiffs abandoned the motion for leave to amend the complaint and forfeited any issue related to that motion for purposes of this appeal. See *id.* (failure to obtain a ruling on a motion before filing notice of appeal resulted in abandonment of the motion and created a procedural default of any issue related to that motion on appeal).

¶ 58                                   E. Dismissal with Prejudice

¶ 59    Lastly, plaintiffs assert that dismissing the chancery complaint with prejudice was reversible error. Plaintiffs contend that the complaint was not deficient and should have been dismissed without prejudice. Plaintiffs further state an amended complaint could have been filed, noting that counsel filed the aforementioned motion for leave to amend the complaint. Plaintiffs also state that allegations involving damages could have been amended with more specificity as the nature and extent of the harm became clearer.

¶ 60    As stated above, plaintiffs forfeited any issue related to the motion for leave to amend the complaint. Still, the complaint should have been dismissed without prejudice, rather than with prejudice.

¶ 61    A dismissal with prejudice is an adjudication on the merits that bars a plaintiff from maintaining another action on the same claim. *Johnson v. Du Page Airport Authority*, 268 Ill. App. 3d 409, 418 (1994). If there is no adjudication on the merits, then a dismissal should be without prejudice, which renders the proceedings a nullity and leaves the parties in the same position as if the case had never been filed. *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2014 IL App (1st) 111290, ¶ 42. The chancery complaint was dismissed under section 2-619(a)(3), which codifies the common law plea of abatement "and signifies a present suspension of all proceedings which, without disputing the justness of [the] plaintiff's claim, objects only to the place, mode or

time of asserting it, leaving [the] plaintiff open to renew the action in another place or form, or at another time." *International Insurance Co. v. Morton Thiokol, Inc.*, 185 Ill. App. 3d 686, 691 (1989). The purpose of section 2-619(a)(3) is " 'to avoid multiplicity of suits, not to prevent access to the courts.' " *Tumminaro v. Tumminaro*, 198 Ill. App. 3d 686, 693 (1990) (quoting *Bernhardt v. Fritzshall*, 9 Ill. App. 3d 1041, 1045 (1973)). It was inconsistent with the purpose and function of section 2-619(a)(3) to dismiss plaintiffs' complaint with prejudice. Pursuant to our power under Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), we modify the circuit court's order so that the complaint is dismissed without prejudice. As modified, we affirm that order.

¶ 62                                III. CONCLUSION

¶ 63    For the foregoing reasons, the judgment of the circuit court is affirmed as modified.

¶ 64    Affirmed as modified.

**No. 1-20-0754**

| | |
|---|---|
| **Cite as:** | *Kristen B. v. Department of Children & Family Services*, 2022 IL App (1st) 200754 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2020-CH-04100; the Hon. Caroline Kate Moreland, Judge, presiding. |
| **Attorneys for Appellant:** | Sharone R. Mitchell Jr., Public Defender, of Chicago (Suzanne A. Isaacson, Assistant Public Defender, of counsel), for appellants. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Bridget DiBattista, Assistant Attorney General, of counsel), for appellees.<br><br>Charles P. Golbert, Public Guardian, of Chicago (Kass A. Plain and Mary Brigid Hayes, of counsel), for intervenors-appellees. |